**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANA RABINOWITZ, SHANA DENNY, and YOLANDA PITRE, Plaintiffs, v. COLGATE-PALMOLIVE COMPANY AND TOM'S OF MAINE, INC., Defendants. | 25-cv-6996 |

**CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs Jana Rabinowitz, Shana Denny, and Yolanda Pitre (collectively "Plaintiffs"), by and through their attorneys, bring this action on behalf of themselves and all others similarly situated against The Colgate Palmolive Company ("Colgate-Palmolive") and Tom's of Maine ("Tom's) (collectively, the "Defendants"). Plaintiffs hereby allege on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and a Plaintiff is a citizen of a state different from at least one Defendant.

2. This Court has personal jurisdiction over Defendants. Defendant Colgate-Palmolive is incorporated and headquartered in New York. Defendant Tom's of Maine has

sufficient minimum contacts with the state of New York and purposefully availed itself, and continues to avail itself of the jurisdiction of this New York through the privilege of conducting their business ventures in the state of New York, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

3. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. Plaintiff Jana Rabinowitz made her purchase of Tom's of Maine toothpaste from a local retailer in this district, and her purchase of Tom's of Maine toothpaste was delivered to and used in this district.

## THE PARTIES

4. **Plaintiff Jana Rabinowitz** is a citizen of New York, residing in Nassau County, New York. In or about 2023 and 2024, Plaintiff Rabinowitz purchased tubes of Tom's of Maine toothpastes from various retail locations in Nassau County and from Amazon.com. On December 10, 2024, Plaintiff Jana Rabinowitz filed a complaint in the New York Supreme Court, Nassau County, on behalf of a New York class of consumers who purchased Tom's of Maine toothpaste and other oral care products.

5. **Plaintiff Shana Denny** is a citizen of Florida, residing in Brevard County. Plaintiff Denny purchased tubes of Tom's of Maine Simply White toothpaste at various local retail stores throughout the relevant time period. On November 11, 2024, Plaintiff Denny filed a complaint in the U.S. District Court for the Middle District of Florida on behalf of a nationwide class of consumers and a Florida subclass who purchased Tom's of Maine toothpaste.

6. **Plaintiff Yolanda Pitre** is a citizen of California, residing in San Mateo County. On or around March 1, 2024, Plaintiff Pitre purchased Tom's of Maine Simply White Mint toothpaste from a local retail store. On December 20, 2024, Plaintiff Pitre filed a complaint in the

U.S. District Court for the Northern District of California on behalf of a nationwide class of consumers and a California subclass who purchased Tom's of Maine toothpaste.

7. Before their purchases, each Plaintiff saw and reviewed Defendants' advertising claims on the packaging and labeling and made their purchases of the Tom's of Maine toothpaste (the "Products") in reliance thereon.

8. Plaintiffs specifically relied upon representations made by Defendants that the product was "naturally sourced," "good for you," and created with "rigorous ingredient and packaging standards." Plaintiffs did not receive the promised benefits or the total value of their purchase.

9. Plaintiffs would not have purchased the product had they known it was contaminated. Plaintiffs have been economically injured by Defendants' misrepresentations, which induced them to purchase the product at a premium. Plaintiffs would purchase the product again if they were assured it was not contaminated by mold or bacteria.

10. **Defendant Colgate-Palmolive** is a publicly traded company whose principal place of business is located in New York.

11. **Defendant Tom's of Maine** is a U.S. manufacturing company whose principal place of business is located in Kennebunk, Maine. It is a majority-owned subsidiary of Colgate-Palmolive.

12. Defendants manufacture, package, distribute, market, advertise, label, and sell various consumer over-the-counter products throughout the United States, including toothpastes.

13. Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including, without limitation, any officer, director, employee, supplier, or distributor

of Defendants who have knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## FACTUAL ALLEGATIONS

### Introduction

14. Tom's of Maine has long been a popular manufacturer of toothpaste and other oral care products. Over the years, it has developed a reputation for producing an environmentally sustainable, natural, and safe suite of over-the-counter ("OTC") products. The packaging of its toothpastes and other oral care products promotes Tom's healthy, pro-environmental qualities and is emblazoned with words like "clean," "vegan," "natural," "not tested on animals," "no artificial flavors, sweeteners or dyes," and "fresh." Some of Tom's products (such as its Silly Strawberry Anticavity toothpaste) are specifically marketed to children and their parents. Its website assures consumers that "Our high standards go beyond natural, and consider safety and effectiveness. It takes a lot of time, effort, and care to do things this way, but we think it's the right thing to do for people and the planet."

### FDA Warning Letter and Investigation

15. On November 5, 2024, the U.S. Food and Drug Administration issued a warning letter to Defendants following an inspection of Tom's of Maine's drug manufacturing facility conducted in May 2024, during which the FDA investigator observed specific violations of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 351(a)(2)(B). A publicly available, redacted copy of the letter is attached to this statement as Exhibit 1.

16. Among other violations, the investigator found that Tom's of Maine had:

- Used water that, for over a year, repeatedly tested positive for *Pseudomonas aeruginosa* (a bacteria), i) to manufacture multiple batches of Tom's Simply White Clean Mint Paste; and ii) as a final rinse in the equipment cleaning process;

- Despite being aware of the water's contamination with *Pseudomonas aeruginosa*, failed to investigate to assess impact on the finished products or the performance of the water system;

- Released batches of unspecified OTC products on multiple occasions despite finding that they were manufactured with water contaminated with "too numerous to count" *Ralstonia insidiosa* (another bacteria)*;*

- Released a batch of Wicked Cool! Anticavity Toothpaste from which "gram-negative cocco-bacilli *Paracoccus yeei*" (another bacteria) had been recovered without sufficient justification for concluding that the finding was due to sample contamination and lab error;

- Acknowledged using insufficient criteria (including the absence of gram-negative microorganisms) to evaluate its water system; and

- Failed to maintain its manufacturing facilities in a good state of repair as evidenced by i) a black mold-like substance observed in close proximity to a water tank and to pails and other equipment that come into contact with product during the manufacturing process; and ii) unsanitary conditions observed in or around equipment or materials used to compound Silly Strawberry Anticavity toothpaste, a product that is marketed to children.

17. The FDA ultimately found that Tom's entire water system was inadequately qualified, and, noted that, given that water is a major ingredient in many of Tom's oral care products, it was essential that Tom's "employ a water system that is robustly designed, and that

[it] effectively control, maintain, and monitor the system to ensure it consistently produces water suitable for pharmaceutical use."

18. The FDA specifically faulted Tom's for failing to evaluate "the quality of the OTC products already distributed that may be impacted by the use of water with possible microbial issues."

19. In response to these and other findings, Tom's of Maine acknowledged that it "lacks adequate specifications" for water used in the final rinse of equipment and stated that it was conducting a "retrospective review" of the microbial incidents in the water and OTC products. The FDA rejected Tom's response as inadequate.

20. In addition, the FDA faulted Tom's for failing to investigate hundreds of product complaints of odor, color, and taste, including complaints about products marketed to children, because they did not indicate a "trend." While Tom's responded by saying: (1) it handles complaints with a "risk-based approach," and (2) that individual complaints are not enough to deem a product inadequate, the FDA found Tom's system for investigating complaints to be inadequate and ordered it to provide an action plan to remediate it.

21. The agency ultimately found that Tom's "methods, facilities or controls for manufacturing, processing, packing, or holding do not conform" to current good manufacturing practice, and that its drug products were adulterated within the meaning 21 U.S.C. § 351(a)(2)(B).

22. The FDA ordered Tom's of Maine to conduct a "detailed risk assessment addressing the potential effects of the observed water system failures on the quality of all drug product lots currently in US distribution or within expiry. Specify actions that you will take in response to the risk assessment, such as customer notifications and product recalls." The FDA also ordered Tom's

of Maine to assess the effectiveness of its cleaning and evaluate the scope of cross-contamination hazards.

**Tom's of Maine's Response to the FDA Action**

23. To date, Defendants have not issued a recall of or offered a refund for any Tom's of Maine product. Tom's website merely states that "we are confident there are no safety issues with our toothpaste and that it is safe to use" and that "our team has been working with the FDA to remedy the issues raised in their May inspection of the Tom's of Maine manufacturing plant in Sanford, Maine, including implementing additional safeguards and making capital investments as part of ongoing plant upgrades."

**Consumer Impact**

24. Following the November 2024 release of the FDA letter, news of the agency's findings went viral and were widely publicized throughout the United States.

25. The potential health impacts of the contaminants detailed in the FDA Letter are significant:

26. The bacteria *Pseudomonas aeruginosa* can cause infections in the blood, skin, ear, eye, and lungs, and in the urinary and gastrointestinal tracts. These infections are particularly dangerous for persons with weakened immune systems and can cause sepsis. Treatment can be difficult because many strains are resistant to antibiotics.

27. The bacteria *Ralstonia insidiosa* can cause blood infections that are less common but increasingly reported and can be particularly serious for patients with compromised immune systems. It is also resistant to commonly used antibiotics.

28. The bacteria *Paracoccus yeei* can also cause infections that are especially serious in immunocompromised patients.

29. Exposure to spores from black mold can also make people sick and can cause fungal infections in people with compromised immune systems.

30. Plaintiffs, unwilling to use toothpaste exposed to bacteria in an unsafe and unsanitary facility, like thousands of consumers who were (reasonably) disgusted and alarmed by the FDA's findings, chose not to wait for an official recall and stopped using and/or discarded or will discard their Tom's toothpastes and other oral care products, rendering their purchases of the Products worthless.

## CLASS ACTION ALLEGATIONS

31. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure, Rule 23(a)(1)–(4), Rule 23(b)(1), (2), and/or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure on behalf of the following proposed classes:

**Nationwide Class**: All persons in the United States who purchased any of the Product for their own use and not for resale since December 16, 2020.

**California Sub-Class:** All persons residing in the State of California who have purchased any of the Product for their own use and not for resale since December 16, 2020.

**Florida Sub-Class:** All persons residing in the State of Florida who have purchased any of the Product for their own use and not for resale since December 16, 2020.

**New York Sub-Class:** All persons residing in the State of New York who have purchased any of the Product for their own use and not for resale since December 16, 2020.

32. Excluded from the Nationwide Class and Subclasses are Defendants, their parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendants have a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

33. This action is brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), and/or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

**Numerosity of the Proposed Classes**
**(Fed. R. Civ. P. 23(a)(1))**

34. The members of the Class are so numerous that their individual joinder would be impracticable. The Class and the state Sub-Classes each comprise at least tens of thousands of consumers. The precise number of Class members, and their addresses, are unknown to Plaintiffs at this time, but can be ascertained from Defendants' records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, supplemented (if deemed necessary or appropriate by the Court) by published notice, including digital notice.

**Predominance of Common Questions of Fact and Law**
**(Fed. R. Civ. P. 23(a)(2); 23(b)(3))**

34. Common questions of law and fact exist as to all members of the Class and Sub-Classes. These questions predominate over the questions affecting only individual members of the Class and Sub-Classes. The common legal and factual questions include, without limitation:

a. Whether Defendants knew or should have known the Products were potentially contaminated, which rendered the Products unsafe and unsuitable for use;

b. Whether Defendants failed to employ quality control measures and failed to properly manufacture, test, and/or inspect the Products before distribution and sale;

c. When Defendants learned or should have learned of the contamination in the Products;

d. Whether Defendants made affirmative misrepresentations and/or false and misleading statements regarding the Products;

e. Whether Defendants failed to disclose material facts regarding the Products;

f. Whether Defendants were negligent in producing the Products;

g. Whether Defendants made negligent misrepresentations in connection with the distribution and sale of the Products;

h. Whether Defendants breached express warranties in connection with the distribution and sale of the Products;

i. Whether Defendants breached the implied warranty of merchantability in connection with the distribution and sale of the Products;

j. Whether Defendants violated the state consumer protection statutes alleged herein;

k. Whether Defendants were unjustly enriched;

l. The nature of the relief, including damages and equitable relief, to which Plaintiffs and the members of the Class and Sub-Classes are entitled; and

m. Whether Defendants are liable for attorneys' fees and costs.

**Typicality of Claims**
**(Fed. R. Civ. P. 23(a)(3))**

35. Plaintiffs' claims are typical of the claims of the Class and Sub-Classes because Plaintiffs, like all other Class and Sub-Class members, purchased Defendants' Products, suffered damages as a result of those purchases, and seek the same relief as the proposed Class and Sub-Class members.

**Adequacy of Representation**
**(Fed. R. Civ. P. 23(a)(4))**

36. Plaintiffs are adequate representatives of the Class and Sub-Classes because their interests do not conflict with the interests of the members of the Class and Sub-Classes, and

because they have retained counsel competent and experienced in complex class actions, including consumer litigation and contamination litigation.

37. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class and Sub-Classes.

**Superiority of a Class Action**
**(Fed. R. Civ. P. 23(b)(3))**

38. A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and members of the Class and Sub-Classes. There is no special interest in Class or Sub-Class members individually controlling the prosecution of separate actions. The damages suffered by individual members of the Class and Sub-Classes, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Further, it would be virtually impossible for the members of the Class and Sub-Classes individually to redress effectively the wrongs done to them. And, even if members of the Class and Sub-Classes themselves could afford such individual litigation, the court system could not, given the thousands of cases that would need to be filed. Individualized litigation would also pose a risk of inconsistent or contradictory judgments. Individualized litigation would increase delays and costs for all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief**
**(Fed. R. Civ. P. 23(b)(1) and (2))**

39. This action may properly be maintained as a class action, because:

a. the prosecution of separate actions by individual members of the Class and Sub-Classes would create a risk of inconsistent or varying adjudication with respect to individual Class and Sub-Class members, which would establish incompatible standards of conduct for Defendants; or

b. the prosecution of separate actions by individual Class and Sub-Class members would create a risk of adjudications with respect to individual members of the Class and Sub-Classes which would, as a practical matter, be dispositive of the interests of other members of the Class and Sub-Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

c. Defendants have acted or refused to act on grounds generally applicable to the Class and Sub-Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class and Sub-Classes as a whole.

**FIRST CAUSE OF ACTION**
**Intentional Misrepresentation**
**(On Behalf of Nationwide Class and all Sub-Classes)**

40. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

41. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Sub-Classes against Defendants for intentional misrepresentation.

42. Reasonable consumers purchase toothpaste to clean their teeth. Particularly, consumers purchase Tom's toothpaste because it is marketed as "safe," "natural," and "healthy," and is promoted by Tom's in health foods stores as a healthier alternative to legacy toothpaste options, for example, Colgate products, which largely make no claims to superior natural or healthy sourcing in ingredients.

43. Defendants manufactured the contaminated toothpaste products for the express purpose of making sales. Product labeling plays an important role in the consumer purchase decision process for merchandise sold at mass merchandisers such as health food stores and supermarkets.

44. Defendants represented to Plaintiffs and the Class members that their toothpaste products were safe, natural, and healthy. These statements would lead a reasonable person to conclude that the products were not exposed to mold or bacteria during manufacturing.

45. Plaintiffs and the Class members reasonably relied on the representation that the products were safe, healthy, and natural. Based on that belief, Plaintiff and the Class members purchased the products.

46. Consumers purchase Tom's toothpaste because it is marketed as "safe," "natural," and "healthy," and is promoted by Tom's in health foods stores as a healthier alternative to legacy toothpaste options, for example, Colgate products, which largely make no claims to superior natural or healthy sourcing in ingredients.

47. Because Defendants' contaminated toothpaste products were exposed to mold and bacteria in the manufacturing process, reasonable consumers are misled and deceived by Defendants' marketing of the products as safe, healthy, and natural.

48. As a result, Plaintiffs and the Class members were harmed when they purchased the products. Plaintiff and the Class members paid for a product that they would not otherwise have purchased.

49. Plaintiffs' and the Class members' reliance on Defendants' representations was a substantial factor in causing this harm. Had Plaintiffs and the Class members known that the

products were manufactured in an environment exposed to harmful mold and bacteria, they would not have purchased them.

50. Plaintiffs and members of the Class and Sub-Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**SECOND CAUSE OF ACTION**
**Negligent Misrepresentation**
**(On Behalf of Nationwide Class and all Sub-Classes)**

51. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

52. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Sub-Classes against Defendants for negligent misrepresentation.

53. Defendants represented to Plaintiffs and the Class members that products were safe, healthy, and natural. This statement would lead a reasonable person to conclude that the products were manufactured in an environment free from mold and bacterial contamination.

54. These representations were false. The FDA's letter proves that the contaminated toothpaste products were manufactured in an environment contaminated with the same substance.

55. Defendants had no reasonable grounds for believing the contaminated toothpaste products were safe, healthy, and natural when they sold them.

56. Defendants intended that Plaintiff and the Class members rely on the representations. The advertisement was placed on product packaging and the product itself solely to induce customers to purchase the product. Defendants understood, or should have understood, that a reasonable person would believe that products marketed as safe, natural, and healthy are not

manufactured in an environment contaminated by dangerous and illness-inducing mold and bacteria.

57. Plaintiffs and the Class members reasonably relied on the representations that the products were safe, healthy, and natural, and based on that belief, and because of it, Plaintiffs and the Class members purchased the contaminated toothpaste products.

58. As a result, Plaintiffs and the Class members were harmed when they purchased the contaminated toothpaste products that, in fact, are not safe, healthy, or natural, as the products expose them to unnecessary health risks. Plaintiff and the Class members also paid for products that they would not otherwise have purchased.

59. Plaintiffs and the Class members' reliance on Defendants' representations was a substantial factor in causing this harm. Had Plaintiffs and the Class members known that the products were not safe, healthy, and natural, Plaintiffs and the Class members would not have purchased the contaminated toothpaste products.

60. Plaintiffs and members of the Class and Sub-Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of Nationwide Class and all Sub-Classes)**

61. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

62. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Sub-Classes against Defendants for breach of express warranty.

63. Defendants marketed and sold the Products into the stream of commerce with the intent that Plaintiffs and members of the Class and Sub-Classes would purchase the Products.

64. Defendants expressly warranted, advertised, and represented to Plaintiffs and members of the Class and Sub-Classes that the Products were and are high quality, healthy, safe, and suitable for human consumption.

65. Defendants made these express warranties regarding the Products' quality, ingredients, and suitability for human use in writing through their website, advertisements, and marketing materials, as well as on the Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and members of the Class and Sub-Classes entered into upon purchasing the Products.

66. Defendants' warranties, advertisements, and representations were made in connection with the sale of the Products to Plaintiff and members of the Class and Sub-Classes. Plaintiffs and members of the Class and Sub-Classes relied on Defendants' warranties, advertisements, and representations regarding the Products in deciding whether or not to purchase Defendants' Products.

67. Defendants' Products do not conform to Defendants' warranties, advertisements, and representations in that they are not safe or appropriate for consumption due to contamination.

68. Defendants should have discovered the contamination through their own testing and expertise, and/or based on testing conducted by various third parties, as alleged herein, that would have revealed the Products as contaminated.

69. Privity exists because Defendants expressly warranted to Plaintiffs and members of the Class and Sub-Classes through the packaging, advertising, marketing, and labeling that the

Products were high quality, healthy, safe, and suitable for human use, and by failing to make any mention of contamination.

70. As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the Class and Sub-Classes suffered actual damages in that they purchased Products that were worth less than the price they paid, and they would not have purchased the Products had they known of the contamination that did not conform to the Products' marketing and advertisements.

71. Plaintiffs and members of the Class and Sub-Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**FOURTH CAUSE OF ACTION**
**Fraudulent Concealment - Fraud by Omission**
**(On Behalf of Nationwide Class and all Sub-Classes)**

72. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

73. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Sub-Classes against Defendants for fraud by omission.

74. Defendants concealed from and failed to disclose to Plaintiffs and members of the Class and Sub-Classes that the Products were contaminated and do not conform to the Products' labels, packaging, advertising, and statements, including, but not limited to, representations that they were high quality, healthy, safe, and suitable for human use.

75. Defendants were under a duty to disclose to Plaintiffs and members of the Class and Sub-Classes the true quality, characteristics, ingredients and suitability of the Products because: (1) Defendants were in a superior position to know the true state of facts about the Products; (2) Defendants were in a superior position to know the actual ingredients, characteristics,

and suitability of the Products for consumption; (3) Defendants had exclusive knowledge of its own test results showing contamination in its Products; and/or (4) Defendants knew that Plaintiffs and members of the Class and Sub-Classes could not reasonably have been expected to learn or discover that the Products were misrepresented in the packaging, labels, advertising, and websites before purchasing the Products.

76. The facts concealed or not disclosed by Defendants to Plaintiffs and members of the Class and Sub-Classes are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Products. No reasonable consumer would have purchased the Products had Defendants adequately and fully disclosed the truth.

77. Defendants knew that this omission was material information that Plaintiffs and members of the Class and Sub-Classes required, and Defendants intentionally omitted and failed to disclose this information to induce the Plaintiffs and members of the Class and Sub-Classes to purchase the Products.

78. Plaintiffs and members of the Class and Sub-Classes did not know or suspect that the Products were unsafe or contained unhealthy ingredients.

79. Plaintiffs and members of the Class and Sub-Classes justifiably relied on Defendants' omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Products, which are inferior when compared to how the Products are advertised and represented by Defendants.

80. As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the Class and Sub-Classes have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they

known of the risk contamination that do not conform to the products' labels, packaging, advertising, and statements.

81. Plaintiffs and members of the Class and Sub-Classes seek actual and punitive damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Nationwide Class and all Sub-Classes)**

82. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

83. Plaintiffs and members of the Class and Sub-Classes conferred a benefit upon Defendants. Plaintiffs and members of the Class and Sub-Classes paid money for the Products, which were not as represented; they were not suitable for human consumption, safe, or natural. Defendants have unjustly retained the benefits conferred upon them by Plaintiffs and Class and Sub-Class members.

84. The circumstances as alleged herein make it inequitable for Defendants to retain such benefit. Specifically, Defendants retained that benefit even though the Products were contaminated, rendering them unsafe and unsuitable for human consumption. If Plaintiffs and Class and Sub-Class members had known the true nature of the Products, they would not have paid money for them or would have paid less.

85. Plaintiffs and the Nationwide Class and Sub-Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

**SIXTH CAUSE OF ACTION**
**Violation of California Unfair Competition**
**Law Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(On Behalf of California State Sub-Class)**

86. Plaintiff Yolanda Pitre ("Plaintiff" for purposes of this Count) incorporates by reference each and every allegation set forth above as if fully written herein.

87. Plaintiff brings this claim on behalf of the California State Sub-Class (the "Class" for purposes of this Count).

88. Defendants' business practices as complained of herein violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"). 171. Defendants' practices constitute "unlawful" business practices in violation of the UCL because, among other things, they violate warranty laws.

89. Defendants' actions and practices constitute "unfair" business practices in violation of the UCL, because, among other things, they are immoral, unethical, oppressive, unconscionable, unscrupulous or substantially injurious to consumers, and/or any utility of such practices is outweighed by the harm caused by consumers.

90. Defendants' actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, Defendants' misrepresentations were likely to deceive reasonable consumers. Among other things, Defendants made affirmative misrepresentations regarding the Products. Specifically, Defendants represented that the Products were suitable for human consumption, safe, and natural. Defendants, however, failed to disclose material facts, namely, that (1) the Products were contaminated and (2) Defendants failed to properly inspect and test Products for toxins and contaminants. Defendants had a duty to disclose these material facts because the Products were unsafe and because Defendants made affirmative representations about the Products. If Plaintiff had known that the Products either (1) were

contaminated, or (2) that Defendants failed to properly inspect and test for toxins and contaminants adequately, Plaintiff would not have purchased the Products.

91. As a result of Defendants' wrongful business practices, Plaintiff and the Class lost money and have suffered injury-in-fact.

92. Defendants' wrongful business practices pose an ongoing threat and should be enjoined.

93. Plaintiff and the Class seek an order enjoining Defendants' unfair or deceptive acts or practices, equitable relief, and any other just and proper relief available. The claims for equitable relief are brought in the alternative should Plaintiff not have an adequate remedy at law.

94. Accordingly, Plaintiff and members of the Class are entitled to judgment and equitable relief.

**SEVENTH CAUSE OF ACTION**
**Violation of California False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**
**(On Behalf of California State Sub-Class)**

95. Plaintiff Yolanda Pitre ("Plaintiff" for purposes of this Count) incorporates by reference each and every allegation set forth above as if fully written herein.

96. Plaintiff brings this claim on behalf of the California State Sub-Class (the "Class" for purposes of this Count).

97. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. 181. It is also unlawful under the FAL to disseminate

statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Id.

98. As alleged herein, the advertisements, labeling, acts, and practices of Defendants relating to the safety, ingredients, and oversight of the Products misled consumers acting reasonably, as stated above.

99. Plaintiff and Class members suffered injuries in fact as a result of Defendants' actions as set forth herein because they purchased the Defendants' Products in reliance on Defendants' false and misleading labeling claims concerning, among other things, the Products' safety, quality, ingredients, and manufacturing oversight.

100. Defendants' business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendants have advertised and labeled the Products in a manner that is untrue and misleading, which Defendants knew or reasonably should have known, and omitted material information from their advertising and product labels.

101. Defendants profited from its sale of the falsely and deceptively advertised and labeled Products.

102. As a result, Plaintiff and the Class are entitled to damages, equitable relief, restitution, and disgorgement of the funds by which Defendants were unjustly enriched.

103. Plaintiff and the Class were damaged because they would not have purchased Defendants' Products had they known the facts regarding their safety and ingredients.

**EIGHTH CAUSE OF ACTION**
**Violation of the Florida Unfair & Deceptive Trade Practices Act,**
**Fla. Stat. §§ 501.201, et seq.**
**(On Behalf of Florida State Sub-Class)**

104. Plaintiff Shana Denny ("Plaintiff" for purposes of this Count) incorporates by reference each and every allegation set forth above as if fully written herein.

105. Plaintiff brings this claim on behalf of the Florida State Class (the "Class" for purposes of this Count).

106. Plaintiff and members of the Class are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

107. Defendants engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

108. The FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce ... "Fla. Stat. § 501.204(1). Defendants participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

109. In the course of its business, among other things, Defendants made affirmative misrepresentations regarding the Products. Specifically, Defendants represented that the Products were suitable for human consumption, safe, and natural. Defendants, however, failed to disclose material facts, namely, that (1) the Products were contaminated; and (2) Defendants failed to properly inspect and test Products or ingredients for toxins and contaminants. Defendants had a duty to disclose these material facts because the Products were unsafe and because Defendants made affirmative representations about the Products. If Plaintiff had known that the Products either (1) were contaminated, or (2) that Defendants failed to properly inspect and test the Products or ingredients for contaminants adequately, Plaintiff would not have purchased the Products.

110. Plaintiff and Class members had no way of discerning that Defendants' representations were false and misleading because Plaintiff and Class members did not have access to Defendants' internal testing, internal testing equipment, internal policies or procedures, or any internal documents regarding contamination.

111. Defendants thus violated the FUDTPA by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Products were safe and suitable for human consumption. Defendants also failed to disclose and warn that the Products were unsafe and unsuitable for consumption, that the Products were contaminated, potentially resulting in injury to humans, and that Defendants failed to properly inspect and test the Products or ingredients for toxins and contaminants.

112. Defendants intentionally and knowingly misrepresented material facts regarding the Products with the intent to mislead Plaintiff and the Class.

113. Defendants knew or should have known that their conduct violated FUDTPA. Defendants owed Plaintiff and the Class a duty to disclose the true and unsafe nature of the Products. Defendants' concealment of the true characteristics of the Products was material to Plaintiff and the Class. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class, about the true nature of the Products.

114. Defendants' violations present a continuing risk to Plaintiff, the Class, and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

115. Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information. As a direct and proximate result of Defendants' violations of the FUDTPA, Plaintiff and the Class suffered injury-in-fact and/or actual damage. Plaintiff and the Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

116. Plaintiff and the Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the FUDTPA.

**NINTH CAUSE OF ACTION**
**Violation of New York General Business Law § 349 NY GBL § 349**
**(On Behalf of New York State Sub-Class)**

117. Plaintiff Jana Rabinowitz ("Plaintiff" for the purposes of this Count) incorporates by reference each and every allegation set forth above as if fully written herein.

118. Plaintiff brings this claim on behalf of the New York State Class (the "Class" for purposes of this Count).

119. NY GBL § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service […]."

120. Here, Defendants purposefully and knowingly took actions directed to consumers, including to Plaintiff and Class, in the form of branding, marketing, advertising and other messaging, claiming that Defendants' Products were fit for their ordinary purpose – to be consumed.

121. Defendants' acts were and are materially misleading because Defendants in fact sold the Products, which were tainted with dangerous bacteria, into commerce. Plaintiff and the Class have been injured because of Defendants' deceptive or unfair acts, because they purchased Defendants' Products at a premium price based on the fact that the Products were fit for consumption when they were not.

122. As such, Plaintiff and the New York State Subclass seek actual damages and at least the minimum statutory damages of $50 per violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class and Sub-Classes, pray for relief and judgment against Defendants as follows:

A. Certifying the Class and Sub-Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class and Sub-Classes, and designating Plaintiffs' counsel as Class Counsel;

B. Awarding Plaintiffs and the Class and Sub-Classes compensatory damages, in an amount exceeding $5,000,000.00, as to be determined by proof;

C. Awarding Plaintiffs and the Class and Sub-Classes appropriate relief, including actual damages as well as statutory damages, where allowable;

D. For declaratory and equitable relief, including restitution and disgorgement;

E. For an order enjoining Defendants from continuing to engage in the wrongful acts and practices alleged herein;

F. warding Plaintiffs and the Class and Sub-Classes the costs of prosecuting this action, including expert witness fees;

G. Awarding Plaintiffs and the Class and Sub-Classes reasonable attorneys' fees and costs as allowable by law;

H. Awarding pre-judgment and post-judgment interest; and

I. Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: December 19, 2025

Respectfully submitted,

*/s/ Jeffrey I. Carton*

Jeffrey I. Carton
Catherine H. Friesen
Denlea & Carton LLP
2 Westchester Park Drive, Suite 410
White Plains, NY 10604
Telephone: (914) 331-0100
jcarton@denleacarton.com
cfriesen@denleacarton.com

William Wright
The Wright Law Office, P.A.
515 N. Flagler Drive, Suite 350
West Palm Beach, FL 33401
Telephone: (561) 514-0904
willwright@wrightlawoffice.com

Thiago Coelho
Wilshire Law Firm, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010
Telephone: (213) 381-9988 Ext 229
thiago.coelho@wilshirelawfirm.com

*Attorneys for Plaintiffs*