UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------:

JANA RABINOWITZ, SHANA DENNY,　　　　:
and YOLANDA PITRE,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Plaintiffs,　　　　　　　:　　　2:25-cv-06996 (JMW)
　　　　　　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
COLGATE-PALMOLIVE COMPANY AND　　　:
TOM'S OF MAINE, INC.,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Defendants.　　　　　　　:
---------------------------------------------------------------:

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Jeffrey I. Carton
Catherine H. Friesen
Denlea & Carton LLP
2 Westchester Park Drive, Suite 410
White Plains, NY 10604
Telephone: (914) 331-0100
jcarton@denleacarton.com
cfriesen@denleacarton.com

William Wright
The Wright Law Office, P.A.
515 N. Flagler Drive, Suite 350
West Palm Beach, FL 33401
Telephone: (561) 514-0904
willwright@wrightlawoffice.com

Thiago Coelho
Wilshire Law Firm, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010
Telephone: (213) 381-9988 Ext 229
thiago.coelho@wilshirelawfirm.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT…………….…………………………………………….……1

BACKGROUND…………………………………………………………………………………1

THE SETTLEMENT TERMS…………………………………………………………………2

    A.    Relief to the Settlement Class……………………………………………..2

    B.    Class Notice and Class Administration…………………………………………3

    C.    Class Representative Service Awards and Class Counsels' Attorneys' Fees……..4

ARGUMENT………………………………………………………………………...5

    A.    The Settlement is Fair and Reasonable and Should be Approved…………………5

        1.    The Settlement is Procedurally Fair………………………………………6

        2.    The Settlement is Substantially Fair………………………………………7

            a.    Costs, Risk and Delay of Trial and Appeal (Fed. R. Civ. P. 23(e)(2))(C)(i)…………………………………………………..8

                1.    The complexity, expense and likely duration of the Litigation…………………………………………………..8

                2.    The risks of establishing liability and damages and maintaining the class through trial……………………9

                3.    The range of reasonableness of the Settlement Fund in light of the best possible recovery and in light of all attendant risks of litigation…………………………11

            b.    The Proposed Settlement Treats Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D))…………………………………………12

            c.    Effectiveness of Proposed Method of Distributing Relief (Fed. R. Civ. P. 23(e)(2)(C)(ii)…………………………………………13

                i.    Forms of Notice…………………………………………14

    ii. Method of Providing Notice................................................14

    iii. Internet Digital Notice.......................................................15

    iv. Sponsored Search Listings.................................................16

    v. Informational Release........................................................16

    vi. Settlement Website, Toll-Free Number, and Contact Information……………………………………………………16

    vii. Class Submission and Distribution………………………17

   d. Terms of Proposed Award of Attorneys' Fees, including Timing of Payment (Fed. R. Civ. P. 23(e)(2)(C)(iii))…..…………17

   e. The Other *Grinnell* Factors Also Favor Preliminary Approval….17

    1. The state of the proceedings and the amount of discovery completed…………………………………..18

    2. The ability of the defendants to withstand greater Judgment……………………………………………18

 B. The Court Should Preliminarily Certify the Settlement Class……………..……19

  1. The Settlement Class Satisfies All Rule 23(a) Prerequisites…………….19

  2. The Settlement Class Satisfies All Rule 23(b)(3) Prerequisites…………22

 C. The Court Should Appoint Plaintiffs' Counsel as Class Counsel………………...23

 D. The Court Should Approve the Notice Program…………………………………24

 E. The Court Should Schedule the Final Approval Hearing…………………………26

CONCLUSION…………………………………………………………..………………………26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanced Battery Techs., Inc. Sec. Litig*,
  298 F.R.D. 171 (S.D.N.Y. 2014) (McMahon, J.) ...................................................13

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..........................................................................................19, 22

*Amigon v. Safeway Constr. Enters., LLC*,
  20-cv-5222, 2024 U.S. Dist. LEXIS 222474 (E.D.N.Y. Dec. 9, 2024).......................8, 13, 17

*In re Austrian and German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)...............................................................7, 8, 18

*Buxbaum v. Deutsche Bank AG*,
  216 F.R.D. 72 (S.D.N.Y. 2003) ...............................................................................24

*C.K. v. McDonald*,
  22-cv-1791, 2025 U.S. Dist. LEXIS 159768 (E.D.N.Y. Aug. 18, 2025) ...............5, 7

*Caccavale v. Hewlett-Packard Co.*,
  *No.* 20-CV-0974, 2024 WL 4250337 (E.D.N.Y. Mar. 13, 2024) ............................5

*Cagan v. Anchor Sav. Bank FSB*,
  No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)................................11

*Calibuso v. Bank of Am. Corp.*,
  299 F.R.D. 359 (E.D.N.Y. 2014) .............................................................................5

*Charron v. Pinnacle Grp., N.Y. LLC*,
  874 F. Supp.2d 179 (S.D.N.Y. 2012).........................................................10, 12, 18

*Charron v. Wiener*,
  731 F.3d 241 (2d Cir. 2013)..............................................................................5, 10

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) .........................................................................10

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)......................................................................... *passim*

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)......................................................................................19

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007)........................................................................................22

*De Lacour v. Colgate-Palmolive Co.*,
  No. 16-CV-8364 (KMW), 2024 WL 36820 (S.D.N.Y. Jan 3, 2024) .................................9, 10

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...........................................................................8

*Enriquez v. Cherry Hill Mkt. Corp.*,
  993 F. Supp. 2d 229 (E.D.N.Y. 2014) ...........................................................................21

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
  No. CV 12-3532 GRB, 2015 WL 2374515 (E.D.N.Y. May 18, 2015) ...................................6

*Fogarazzao v. Lehman Bros., Inc.*,
  232 F.R.D. 176 (E.D.N.Y. 2005) ...................................................................................21

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)...................................................................................11

*Goldemberg v. Johnson & Johnson Consumer Co., Inc.*,
  317 F.R.D. 374 (S.D.N.Y. 2016) ...............................................................................20, 21

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)........................................................................................22

*Handschu v. Special Servs. Div.*,
  787 F.2d 828 (2d Cir. 1986)........................................................................................24

*Hunter v. Blue Ridge Bankshares, Inc.*,
  No. 23-CV-8944, 2025 WL 1649323 (E.D.N.Y. June 11, 2025) .....................................7, 18

*In re Ira Haupt & Co.*,
  304 F. Supp. 917 (S.D.N.Y. 1969) .................................................................................9

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................................12

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)....................................................................................19, 21

*Marriott v. Cnty. of Montgomery*,
  227 F.R.D. 159 (N.D.N.Y. 2005) ..................................................................................22

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009).......................................................................................5, 6

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ..........................................................................25

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp.2d 611 (S.D.N.Y. 2012)..................................................................23

*Moses v. New York Times, Co.*,
    79 F.4th 235 (2d Cir. 2023) ..........................................................................5, 6, 8

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950).............................................................................................24

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ..............................................................................11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...........................................................................6

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
    164 F.R.D. 362 (S.D.N.Y.) *aff'd sub nom. In re Prudential Sec. Inc. Ltd.*
    *P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996)..........................................................24

*Robidoux v. Celani*,
    987 F.2d 931 (2d. Cir. 1993)...............................................................................20

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015)..................................................................................20

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)........................9

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)........................................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..................................................................................14

*Weigner v. The City of New York*,
    852 F.2d 646 (2d Cir. 1988)................................................................................24

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)..................................................................................13

*Willix v. Healthfirst, Inc.*,
    No. 07-cv-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ............................9

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
    396 F.3d 922 (8th Cir. 2005) ...............................................................................9

**Statutes**

Class Action Fairness Act ("CAFA")........................................................................2, 3, 4

Cal. Bus. & Prof. Code §§17500 *et seq.* ........................................................................2

Cal. Bus. & Prof. Code §§17200 *et seq.* ........................................................................2

Fla. Stat. §§501.201 *et seq.* ........................................................................................2

New York General Business Law §349 .............................................................. 2, 10, 11

**Other Authorities**

Fed. R. Civ. P. 23(a)(1) ..............................................................................................19

Fed. R. Civ. P. 23(a)(2) ..............................................................................................19

Fed. R. Civ. P. 23(a)(3) ..............................................................................................20

Fed. R Civ. P. 23(a)(4) ...............................................................................................21

Fed. R. Civ. P. 23(b)(3) ................................................................................19, 22, 26

Fed. R. Civ. P. 23(c) ...................................................................................................25

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................25

Fed. R. Civ. P. 23(e) ...................................................................................................14

Fed. R. Civ. P. 23(e)(1)(B) .........................................................................................13

Fed. R. Civ. P. 23(e)(2)(A) ...........................................................................................7

Fed. R. Civ. P. 23(e)(2)(C)(i) ........................................................................................8

Fed. R. Civ. P. 23(e)(2)(C)(ii) ....................................................................................13

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................................................................17

Fed. R. Civ. P. 23(e)(2)(D) .........................................................................................12

Fed. R. Civ. P. 23(g)(1)(A) .........................................................................................23

## PRELIMINARY STATEMENT

Shana Denny, Jana Rabinowitz, and Yolanda Pitre individually and in their capacities as representatives of the Class (collectively "Plaintiffs" or Class Representatives[1]), respectfully submit this memorandum of law in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

## BACKGROUND

Tom's of Maine, Inc. ("Tom's"), a subsidiary of the Colgate-Palmolive Company ("Colgate") (collectively, "Defendants"), manufacturers oral care and personal care products.

On November 5, 2024, the U.S. Food and Drug Administration ("FDA") issued a warning letter to Defendants following its May 2024 inspection of Tom's' Sanford, Maine manufacturing facility, in which it raised concerns that certain conditions at the facility were not in compliance with the FDA's Current Good Manufacturing Processes. Following the inspection, the Defendants completed a review of pre-release testing data for approximately 4,900 finished toothpastes manufactured over a three-year period, and found that no batch showed a safety risk to consumers.

Plaintiffs are consumers who purchased products from Tom's originating from that facility and who subsequently filed suit against Defendants in courts across the country. Plaintiffs allege that Defendants' "clean" and "natural" marketing of its products misled reasonable consumers, who would not have purchased those products had they known about the conditions described in the FDA's warning letter.

On May 28, 2025, the Parties engaged in private mediation with the Honorable Suzanne H. Segal (Ret.) of Signature Resolution. The Parties exchanged pre-mediation memoranda, negotiated

---

[1] The Parties' Class Action Settlement Agreement and Release is filed concurrently herewith as Exhibit A. Unless stated otherwise, all capitalized terms shall have the same meaning as set forth in the Parties' Class Action Settlement Agreement and Release filed concurrently with this Motion.

with Judge Segal's assistance over a full day's mediation session, and continued to negotiate with Judge Segal's assistance by telephone and email thereafter. Following these negotiations, the Parties reached the Settlement outlined below.

On December 19, 2025, in accordance with the Settlement's terms, Plaintiffs filed their Consolidated Complaint on behalf of a putative nationwide class of consumers who purchased Class Products, as well as putative subclasses of California, Florida, and New York consumers who purchased Class Products, wherein they alleged the following causes of action against Defendants: (1) Intentional Misrepresentation, (2) Negligent Misrepresentation, (3) Breach of Express Warranty, (4) Fraudulent Concealment – Fraud by Omission, (5) Unjust Enrichment, (6) Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§17200 *et seq.* ("UCL"), (7) Violation of the California False Advertising Law, Cal. Bus. & Prof. Code §§17500 *et seq.* ("FAL"), (8) Violation of the Florida Unfair & Deceptive Trade Practices Act, Fla. Stat. §§501.201 *et seq.* ("FUDTPA"), and (9) Violation of the New York General Business Law §349 ("GBL").

## THE SETTLEMENT TERMS

### A.    <u>Relief to the Settlement Class</u>

The Agreement provides for a non-reversionary common Settlement Fund of **$2,900,000** for the Settlement Class. Agreement, Sec. 3.1. The Settlement Fund will be used to pay all Settlement expenses, including Class Members' Claims, Notice and Other Administrative Costs, CAFA Notice, Class Representative Service Awards, and Class Counsel's Fee Award. *Id.*

The Settlement Class shall be defined as "all purchasers within the United States that, between November 21, 2020 through the Preliminary Approval Date, purchased for use and not for resale or distribution purposes, one or more of the Class Products described in Section 2.14"

of the Agreement. *Id.*, Sec. 2.8. The Settlement Class does not include: (1) the Honorable James M. Wicks and members of his immediate family; (2) Colgate; (3) Tom's; (4) any entity in which Colgate or Tom's has a controlling interest; (4) any of Colgate and Tom's' subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (5) any Persons who timely exclude themselves from the Settlement Class. *Id.*

To make claims and obtain relief, Settlement Class Members will fill out and submit a Claim Form either by mail or through the Settlement Website established by the preliminarily-approved Class Administrator. *Id.*, Sec. 5.1. The Claim Form will ask the Claimant to provide their name, mailing address, email address, and telephone number, as well as a sworn statement that he or she purchased one or more of the Class Products during the Class Period. *Id.* Class Members who submit an Approved Claim and that is accompanied by Proof of Purchase of Class Products will be eligible for a full refund for up to three Class Products. *Id.*, Sec. 5.3. Class Members who do not provide Proof of Purchase will receive the average manufacturer's suggested retail price of up to one Class Product claimed per household. *Id.*, Sec. 5.2.

### B.    Class Notice and Class Administration

Per the Agreement, Plaintiffs respectfully request that the Court appoint Epiq Systems, Inc. ("Epiq") as the Class Administrator. *Id.*, Sec. 2.9. Once appointed, Epiq shall establish the Settlement Fund and arrange for the dissemination of the Class Notice and CAFA Notice in accordance with the Notice Plan. *Id.*, Sec. 6.1. Class Notice will commence no later than thirty days following the entry of a Preliminary Approval Order. *Id.*, Sec. 6.3.

The Settlement Agreement provides two forms of notice that Epiq shall use to disseminate the Settlement Agreement to Class Members: a Long-Form Notice and Short-Form Notice. *Id.*, Exs. 1-2. The Notice Plan provides for a robust media campaign consisting of state-of-the-art

targeted internet notice, social media notice, and search engine marketing. *Id.*, Sec. 6.2. Epiq shall also establish a Settlement Website, which shall contain the Long Form Notice in both downloadable PDF format and HTML format with a clickable table of contents. *Id.*, Sec. 6.1, 6.3. The Settlement Website shall also contain answers to frequently asked questions, the contact information for Epiq and Class Counsel, the Consolidated Complaint and signed Preliminary Approval Order, Class Counsel's forthcoming fee motion, a downloadable and online version of the Claim Form, and a downloadable version of a Class Member exclusion form. *Id*. Additionally, Epiq shall establish a toll-free informational telephone number for Settlement Class Members to call. *Id.*, Sec. 6.2.

## C.    Class Representative Service Awards and Class Counsels' Attorneys' Fees

The Agreement provides for a Fee Award for Class Counsel of up to 33% of the Settlement Fund—or $957,000—along with reasonable associated litigation costs. *Id.*, Sec. 4.1. Class Counsel intends to file a Fee Award application pursuant to the schedule to be set by the Court that shall seek attorneys' fees and verified expenses.

Additionally, that Fee Award application shall request Service Awards for the Class Representatives—Rabinowitz, Denny and Pitre—and the Special Plaintiffs—William Foreman and Amanda Zetterstrom—in the amount of $1,000 each as compensation for their time and effort in obtaining this recovery for the Settlement Class. *Id*. Plaintiffs have expended significant time and effort to litigate their claims and negotiate the Settlement Agreement for the benefit of the Class. Additionally, Mr. Foreman and Ms. Zetterstrom both also filed putative class actions against Defendants alleging similar causes of action as Plaintiffs and likewise both contributed significant time and effort towards obtaining recovery for the Settlement Class.

4

## ARGUMENT

### A.    The Settlement is Fair and Reasonable and Should be Approved

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only . . . on finding that [the agreement] is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). The "fair, reasonable and adequate" standard effectively requires parties to show that a settlement agreement is both: (1) procedurally fair and (2) substantively fair. *See Charron v. Wiener,* 731 F.3d 241, 247 (2d Cir. 2013) (citations omitted); *accord McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009). Courts apply a "higher degree of scrutiny" when reviewing proposed class settlements reached prior to class certification. *Calibuso v. Bank of Am. Corp*., 299 F.R.D. 359, 366 (E.D.N.Y. 2014).

In undertaking this inquiry, a court must explicitly consider whether (1) "the class representatives and class counsel have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate"; and (4) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2); *see also Moses v. New York Times, Co*., 79 F.4th 235, 242 (2d Cir. 2023); *Caccavale v. Hewlett-Packard Co., No.* 20-CV-0974, 2024 WL 4250337, at * 9 (E.D.N.Y. Mar. 13, 2024). Following the 2018 amendments to Rule 23, the Second Circuit "emphasized that district courts must consider the four factors outlined in Rule 23(e)(2) holistically in addition to the *Grinnell* factors when evaluating a proposed class action settlement."[2] *C.K. v. McDonald*, 22-cv-1791, 2025 U.S. Dist. LEXIS 159768 (E.D.N.Y. Aug. 18, 2025) (citing *Moses*, 79 F.4th at 243) (internal quotation marks removed).

---

[2] The nine *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to

Here, as set forth below, the Settlement is both procedurally and substantively fair, reasonable and adequate in light of the Rule 23(e)(2) factors and the applicable *Grinnell* factors.

### 1.    The Settlement is Procedurally Fair

To demonstrate the procedural fairness of a settlement, a party must show that the agreement "is the product of arms-length, good faith negotiation." *See McReynolds*, 588 F.3d at 804 (citing and quoting *People United for Children, Inc. v. City of New York*, No. 99 CV 648(KTD), 2007 WL 582720 (S.D.N.Y. Feb. 26, 2007)). Following the Second Circuit's *Moses* decision, a court may not "presume[] that the proposed settlement [is] fair, reasonable, and adequate because it was reached in an arm's-length negotiation." *Moses,* 79 F.4th at 243 (emphasis in original). Factors that demonstrate this include the duration and transparency of negotiations, the experience of counsel, and the extent of discovery in litigation. *Flores v. Mamma Lombardi's of Holbrook, Inc.*, No. CV 12-3532 GRB, 2015 WL 2374515, at *4 (E.D.N.Y. May 18, 2015).

Here, the Agreement is the product of arm's-length, good faith negotiation between the Parties that was mediated under the experience and guidance of the Honorable Suzanne H. Segal (Ret.). *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 35 (E.D.N.Y. 2019) (the assistance of "highly qualified mediators" in "precertification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *see also* 2 McLaughlin on Class Actions §6:7 (15th ed. 2018) ("A settlement reached after supervised mediation receives a presumption of reasonableness and the absence of collusion.") (citing cases). Additionally, both Parties here are represented by counsel that are highly experienced in litigating

---

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *McReynolds*,  588 F.3d at 804 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

consumer class actions and exchanged substantial informal discovery regarding Plaintiff's claims as part of their settlement negotiations. *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (citing *Plummer v. Chemical Bank*, 668 F.2d 654, 658–60 (2d Cir. 1982) ("To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation to enable the Court to intelligently make an appraisal of the settlement.") (internal quotation marks and ellipses omitted); *see also Hunter v. Blue Ridge Bankshares, Inc.*, No. 23-CV-8944, 2025 WL 1649323, at *19 (E.D.N.Y. June 11, 2025) (granting preliminary approval because "while no discovery has been taken by the parties, [plaintiff's] investigation into his claim compels a finding that the parties possess the information necessary to negotiate a well-informed, and ultimately fair and reasonable settlement.").

In addition, as set forth more fully below, the Class Representatives themselves adequately represent the Class as their interests are aligned with, and not antagonistic to, "the interests of other members of the class." Rule 23(e)(2)(A); *C.K.*, 2025 U.S. Dist. LEXIS 159768, at *29. The Class Representatives are all consumers of the Class Products who brought class action lawsuits across the country. There is no conflict of interest between the Class Representatives and other consumers of the Class Products.

## 2.      The Settlement is Substantially Fair

When reviewing the substantive fairness of a proposed class action lawsuit in light of the overlapping *Grinnell* and Rule 23(e)(2) factors, the Second Circuit has cautioned that the "the rule now requires courts to expressly consider two core factors when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Moses,* 79 F.4[th] at 244.

### a.    Costs, Risks and Delay of Trial and Appeal (Fed. R. Civ. P. 23(e)(2)(C)(i))

The costs, risks, and delay of trial and appeal specified in Rule 23(e)(2)(C)(i), "subsume[] several *Grinnell* factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, . . . and the risks of maintaining the class through trial." *Amigon v. Safeway Constr. Enters., LLC,* 20-cv-5222, 2024 U.S. Dist. LEXIS 222474, at *12 (E.D.N.Y. Dec. 9, 2024) (citations omitted). The benefits offered by the Settlement fully address these fairness factors.

### 1.    The complexity, expense and likely duration of the litigation

Consumer class action lawsuits, like this action, are typically complex, expensive, and lengthy. *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010). By reaching a settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure recovery for the class. See *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank,* 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.").

Indeed, further litigation here would result in significant additional expenses and delays to the Settlement Class's recovery. Plaintiffs would need to overcome motions to dismiss, and if any claims survive, discovery would be required to establish liability and prove class-wide damages. Plaintiffs would seek class certification and Defendants would oppose. Should the action be certified, Defendants would likely then move for summary judgment. Defendants could very well prevail on such a motion, as they did in *De Lacour v. Colgate-Palmolive Co.*, No. 16-CV-8364 (KMW), 2024 WL 36820 (S.D.N.Y. Jan 3, 2024). There, the Southern District granted summary judgment against plaintiffs (and decertified their class) who brought similar labeling claims against

8

Defendants' products as Plaintiffs do here. *Id.* At *7. While Plaintiffs maintain that their claims here are stronger than those brought in *De Lacour* a substantial risk remains.

Finally, even if the action were to be certified and Plaintiffs' Consolidated Complaint survives summary judgment, a trial is expected to be lengthy and consume tremendous time and resources. Any judgment reached through trial is likely to be appealed. By contrast, this Settlement provides guaranteed monetary relief to the Settlement Class in an efficient and timely manner. Barring settlement, this case would "likely drag on for years, require the expenditure of millions of dollars, all the while class members would receive nothing." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005). Accordingly, this factor favors approval.

2.   The risks of establishing liability and damages and maintaining the class through trial

While Plaintiffs believe their case to be strong, "[l]itigation inherently involves risks." *Willix v. Healthfirst, Inc*., No. 07-cv-1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (citation omitted). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

Here, continued litigation poses significant risks for Plaintiffs' potential recovery. As discussed above, Defendants have previously prevailed on similar claims regarding the "natural" marketing of its products in a prior-consumer case on summary judgment. *De Lacour*, 2024 WL 36820, at *7 (granting summary judgment with respect to plaintiff's CLRA, FAL, UCL, FDUTPA, NYGBL, and express breach of warranty claims and finding that reasonable consumers were not misled by Defendants' "natural" marketing into believing that their products contained no synthetic ingredients).

9

Likewise, Plaintiffs will face challenges in maintaining a certified class through trial. Should Plaintiffs prevail on a motion for class certification, Defendants will likely seek an interlocutory appeal or otherwise move to decertify it. Indeed, Defendants also previously prevailed on such a decertification motion in *De Lacour*. *Id.* At *7 (finding "no generalized proof of deception, and thus common issues of acts do not predominate"). Many courts in this Circuit have recognized that such decertification risks weigh in favor of settlement approval. *See Charron v. Pinnacle Grp., N.Y. LLC*, 874 F.Supp.2d 179, 200 (S.D.N.Y. 2012) ("It is well-settled in the Second Circuit that, in approving a class settlement, a court must take into consideration the specter of class decertification") (citing cases), *aff'd sub nom Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).

Additionally, as part of the Parties' informal mediation exchange of information, Defendants provided Plaintiffs with documentation showing that, after the FDA's May 2024 inspection, Tom's completed a review of pre-release testing for data of approximately 4,900 finished toothpastes manufactured over a three year period reflecting samples of every single batch sold to consumers across the United States. *See* Agreement, Sec. 1.I. That review showed no safety risk to consumers. *Id.*

Finally, "[t]he amount of recovery Plaintiffs" would receive "if they prevailed at trial is uncertain." *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992). At trial, Plaintiffs will make arguments in support of their claims for compensatory damages and statutory damages under the GBL, while Defendants will presumably argue that reasonable consumers were neither defrauded nor harmed by the purchase of their products regardless of the FDA's warning letter. These issues will necessitate the use of expert witnesses to determine the existence and amount of actual damages" and would cause the "complexities of calculating

10

damages [to] increase geometrically." *Id.* Even if Plaintiffs were to prevail, there is no guarantee that they will even obtain a comparable recovery for the Class as is presently provided by the Agreement.

Put simply, further litigation of Plaintiffs' claims is permeated by substantial risk, expense and delay which are otherwise eliminated by the Parties' Agreement. Accordingly, this factor weighs in favor of preliminary approval.

> 3. <u>The range of reasonableness of the Settlement Fund in light of the best possible recovery and in light of all attendant risks of litigation</u>

Whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005). "Instead, 'there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.,* 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor Sav. Bank FSB,* No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where the "best possible recovery would be approximately $121 million").

Here, the Settlement Fund provides $2,900,000 for the Settlement Class, which is well within the range of reasonableness in light of the best possible recovery and the attendant risks of further litigation. This fund represents "more than a fraction of the potential recovery" for the

Settlement Class, particularly in light of the above-described risks inherent in further litigation of Plaintiffs' claims. When "weighed against the prospect of a speculative payment years down the road," the Settlement provides for a "swift and reliable process for thousands" of class members to "obtain relief it might otherwise take years to establish." *Charron*, 874 F.Supp.2d at 201 ("Moreover, when settlement assures immediate payment of substantial amounts to Class Members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor.") (internal citations omitted).

      **b.**    **The Proposed Settlement Treats Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D))**

The terms of the Settlement Agreement provide substantial relief for the Class and treat all Class Members equitably relative to each other in accordance with Fed. R. Civ. P. 23(e)(2)(D). "It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). Although the reaction of the Class to the Settlement and analysis of this factor is still premature given that the Notice Plan cannot occur until after the Settlement is preliminarily approved, that the Class Representatives have expressed approval of the Settlement currently weighs in favor of preliminary approval. In addition, the proposed Settlement Agreement includes a robust Notice Plan to ensure Class Members learn about their eligibility to participate. Finally, other than the Service Awards sought for the Class Representatives and the two Special Plaintiffs (who served as proposed class representatives in other lawsuits brought against Defendants), the proposed plan treats all Claimants uniformly: each Claimant with Proofs of Purchase will receive a pro rata distribution based on the number of Class Products purchased (capped at 3) and Claimants without Proofs of Purchase will receive a distribution amounting to

the average manufacturer's suggested retail price (subject to a class-wide pro rata deduction) for up to one (1) Class Product claimed per household.

**c.**      **Effectiveness of Proposed Method of Distributing Relief (Fed. R. Civ. P. 23(e)(2)(C)(ii))**

In preliminarily approving a class action settlement, the Court must consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims." *Amigon,* 2024 U.S. LEXIS at * 14 (citing Fed. R. Civ. P. 23(e)(2)(C)(ii). "A plan for allocating settlement funds need not be perfect and need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* (cleaned up). Here, the Parties have outlined a proposal for distributing relief to the Class that is rationally based on their purchases of the Class Products, and that is fair and equitable. This factor also weighs in favor of preliminary approval.

Under Rule 23(e)(1)(B), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." "A notice program must provide the 'best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *In re Advanced Battery Techs., Inc. Sec. Litig*, 298 F.R.D. 171, 182 (S.D.N.Y. 2014) (McMahon, J.). If the average class member understands "the terms of the proposed settlement and. . .the options that are open to them in connection with [the] proceedings," then the notice is adequate. *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (alteration in original). The proposed Notice Plan satisfies this standard.

### i.    Forms of Notice

Here, the proposed forms of notice consist of a Long Form Notice and a Short Form Notice, attached as Exhibits 1 and 2 to the Settlement Agreement, respectively. These notice documents provide Class Members with sufficient information to make an informed and intelligent decision about the Settlement.

The notices are written in simple, straightforward language that, among other things, includes: (1) basic information about the Actions, (2) a description of the benefits provided by the Settlement, (3) an explanation of how Class Members can obtain Settlement benefits, (4) an explanation of how Class Members can exercise their right to request exclusion from or object to the Settlement, (5) an explanation that any claims against the Defendants that could have been litigated in this action will be released if the Class Member does not request exclusion from the Settlement, (6) information regarding Class Counsel's Fee Award, and (7) the Final Approval Hearing date. Accordingly, the proposed notices satisfy the content requirements of Rule 23(e). *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) ("The settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'") (quoting *Weinberger*, 698 F.2d at 70).

### ii.    Methods of Providing Notice

As set forth in the accompanying declaration of Cameron R. Azari, the Notice Plan is designed to reach approximately 70% of the Settlement Class with a digital/internet notice program (digital notice and social media). Azari Decl. ¶18. The reach will be further enhanced by internet-sponsored search listings, an informational release, and a Settlement Website, which are not

included in the estimated reach calculation.[3] *Id.* This satisfies the reach standard outlined in the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010).

### iii.    Internet Digital Notice

The Notice Plan includes targeted digital advertising ("Digital Notices") on the selected advertising networks, *Basis Display Network* and *Google Display Network*, which represent thousands of digital properties across all major content categories. Azari Decl. ¶ 25. The Notice Plan is designed to reach members of the Settlement Class and encourage their participation by directing Digital Notices to selected target audiences (including past purchasers of Tom's toothpaste and individuals who have searched for or exhibited an interest in Tom's products) and linking directly to the Settlement Website, thereby providing visitors with easy access to relevant information and documents. *Id.* ¶¶ 25, 29.

Digital Notices will also be placed on the leading social media platforms in the United States, including *Facebook* and *Instagram*. *Id.* ¶ 26. The social media campaign will use an interest-based approach, focusing on users' interests on social media platforms and capitalizing on the target audience's propensity to engage. *Id.*

The Digital Notices will be distributed to a variety of target audiences, including those whose interests and/or preferences are relevant. *Id.* ¶ 28. All Digital Notices will appear on desktops, mobile, and tablet devices. *Id.* Digital Notices on *Basis Display Network*, *Google Display Network*, *Facebook*, and *Instagram* will be displayed nationwide. *Id.* Digital Notices will

---

[3] "Reach" refers to the estimated percentage of the unduplicated audience exposed to the notice. Notice exposure is defined as the opportunity to see a notice. Azari Decl. ¶18. "Frequency" of notice exposure is the average number of times that those reached by a notice were exposed to the notice. *Id.*

15

also be targeted (remarketed) to people who click on a Digital Notice. *Id.* Combined, approximately 285 million targeted impressions will be generated by Digital Notices, which will be targeted nationwide. *Id.* ¶ 30.

### iv. Sponsored Search Listings

To facilitate locating the Settlement Website, sponsored search listings will be procured on the three most-visited internet search engines: *Google*, *Yahoo!*, and *Bing*. *Id.* ¶ 31. When visitors to these search engines search for selected keyword combinations related to the Settlement, the sponsored search listing advertisement created for this Settlement will be displayed. *Id.* Sponsored search listings will be displayed nationwide and will link directly to the Settlement Website. *Id.*

### v. Informational Release

To build additional reach and extend exposures, a party-neutral Informational Release will be issued nationwide over PR Newswire's U.S.1 to approximately 13,000 general media (print and broadcast) outlets, including local and national newspapers, magazines, national wire services, television and radio broadcast media across the United States, as well as over 4,000 websites, online databases, and internet networks. *Id.* ¶ 32.

### vi. Settlement Website, Toll-Free Number, and Contact Information

Epiq will create a dedicated website for the Settlement with an easy-to-remember domain name. *Id.* ¶ 34. Relevant documents will be posted on the Settlement Website, including the Settlement Agreement, Consolidated Complaint, Preliminary Approval Order, Claim Form, Long Form Notice, and other case-related documents. *Id.* In addition, the Settlement Website will include relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Settlement Class Members may opt-out (request exclusion) from or object to the Settlement, contact information for the Class Administrator, and how to obtain other case-related information.

*Id.* Settlement Class Members will also be able to file a Claim Form on the Settlement Website. *Id.* The Settlement Website address will be prominently displayed in all Notice documents. *Id.*

A toll-free telephone number will be established for the Settlement. Settlement Class Members will be able to call for additional information, listen to answers to FAQs, and request that a Long Form Notice be mailed to them. *Id.* ¶ 35. Further, a postal mailing address will be established, allowing Settlement Class Members to request additional information or ask questions. *Id.* ¶ 36.

### vii. Claims Submission and Distribution

The Notices will provide a detailed summary of relevant information about the Settlement, including the Settlement Website address, and how Settlement Class Members can submit a Claim Form online or by mail. *Id.* ¶ 37. With any method of filing a Claim Form, Settlement Class Members will be given the option of receiving a digital payment or a traditional paper check. *Id.*

### d. Terms of Proposed Award of Attorneys' Fees, including Timing of Payment (Fed. R. Civ. P. 23(e)(2)(C)(iii))

"When analyzing the proposed settlement agreement for final approval, this Court will review Plaintiffs' application for attorneys' fees, taking into account the interests of the class." Amigon, 2024 U.S. LEXIS at * 15. Here, like in *Amigon*, while Plaintiffs' counsel have not yet applied for attorneys' fees, they have agreed not to seek more than one-third of the total Settlement amount, so this factor does not weigh against settlement approval. *Id.*

### e. The Other *Grinnell* Factors Also Favor Preliminary Approval

Finally, the remaining *Grinnell* factors also favor preliminary approval.

1.    The stage of the proceedings and the amount of discovery completed

"To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation to enable the Court to intelligently make an appraisal of the settlement." *Austrian and German Bank Holocaust Litig*., 80 F. Supp. 2d at 176  (internal quotation marks and ellipses omitted). As discussed above, the Parties engaged in a substantial exchange of information during mediation through which they were able to understand the strengths and weaknesses of their positions and "negotiate a well-informed, and ultimately fair and reasonable settlement of Plaintiffs' claims." *Hunter*, 2025 WL 1649323, at *19. Accordingly, this factor weighs in favor of preliminary approval.

2.    The ability of the defendants to withstand greater judgment

"A defendant's ability to withstand greater judgment, standing alone, does not suggest that the settlement is unfair." *Charron*, 874 F.Supp.2d at 201. Instead, "Defendant's ability to satisfy a judgment is more important. . .than their ability to pay yet more." *Id.* Here, Class Counsel does not contend that Defendants could not withstand a greater judgment. Nevertheless, that "the duration of the litigation, the complexity of the issues, and the fact that the Settlement provides Class Members with more prompt relief tha[n] they would receive at the conclusion—whenever that may occur—of a litigation process" strongly supports that the Settlement should be approved. *Id.* (granting final approval).

In sum, collectively and independently, the Rule 23(e)(2) and *Grinnell* factors warrant the conclusion that the Settlement is fair, adequate, and reasonable and favor granting preliminary approval.

**B.      The Court Should Preliminarily Certify the Settlement Class**

A court may certify a settlement class upon finding that the action underlying the settlement satisfies all Rule 23(a) prerequisites and the requirements of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–22 (1997); *Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."). As set forth more fully below, the proposed Settlement Class satisfies all of the prerequisites of Rule 23(a) and Rule 23(b)(3), and, consequently, Plaintiffs respectfully ask the Court to certify the Settlement Class preliminarily for settlement purposes.

**1.      The Settlement Class Satisfies All Rule 23(a) Prerequisites**

Rule 23(a) has four prerequisites for certification of a class: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy. The Settlement Class meets each of these four prerequisites.

(i)  Numerosity

To satisfy numerosity, Plaintiffs must show that their proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995).

Here, the Class is "obviously numerous," as there is no dispute between the Parties that tens of thousands of consumers purchased the relevant products during the Class Period. *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Accordingly, numerosity is met.

(ii)   Commonality

To satisfy commonality, Plaintiffs must show that "questions of law or fact common to the [proposed] class" exist. Fed. R. Civ. P. 23(a)(2). The U.S. Supreme Court has clarified that the

commonality prerequisite will be satisfied where members of a proposed class have brought claims that all centrally "depend upon [the resolution of] a common contention." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). The Second Circuit has construed this instruction liberally, holding that plaintiffs need only allege injuries "derive[d] from defendants' . . . unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015).

Here, Plaintiffs' claims depend almost entirely on the resolution of common questions of fact or law, including, *inter alia*: (1) whether Defendants knew or should have known about the concerns raised in the FDA Warning Letter, (2) whether Defendants made affirmative misrepresentations and/or concealed or omitted key material facts about its products, (3) whether Defendants were negligent in producing its products, (4) whether Defendants breached express or implied warranties in connection with the distribution and sale of its products, and (5) whether Defendants violated state consumer protection statutes. The resolution to each of these questions can be answered through common evidence pertaining to Defendants' knowledge and conduct. "Answers to the[se] common questions undoubtedly will 'drive the resolution of the litigation' with respect to all parties." *Goldemberg v. Johnson & Johnson Consumer Co., Inc.,* 317 F.R.D. 374, 400 (S.D.N.Y. 2016) (citing *Dukes*, 564 U.S. at 349-50). Accordingly, commonality is met.

(iii)    Typicality

To satisfy typicality, Plaintiffs must show that their claims "are typical of the [class's] claims." Fed. R. Civ. P. 23(a)(3). The Second Circuit U.S. Court of Appeals has interpreted this prerequisite to require plaintiffs to show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d. Cir. 1993) (citations omitted) (in such instances, "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."). Courts in this District have repeatedly found this prerequisite easily satisfied, particularly in

20

consumer class action cases. *See Enriquez v. Cherry Hill Mkt. Corp.*, 993 F. Supp. 2d 229, 233 (E.D.N.Y. 2014); *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (E.D.N.Y. 2005) ("The typicality requirement is not demanding." (internal citations and quotation marks omitted)).

Here, Plaintiffs' claims are typical of the Settlement Class. Like all unnamed Class Members, they purchased Tom's toothpastes and allege that they would not have purchased those products had they known about the conditions described in the FDA's warning letter. Put differently, Plaintiffs are "[c]onsumers of the same product," were "exposed to the same marketing and packaging," and "will have almost entirely the same claims with at most 'minor variations' in the facts surrounding their purchase of the products." *Goldemberg*, 317 F.R.D. at 400. Accordingly, typicality is met.

(iv)    Adequacy

To satisfy adequacy, Plaintiffs must show that they and their counsel will "fairly and adequately protect the interests of the [proposed] class." Fed. R Civ. P. 23(a)(4). To do this, Plaintiffs must demonstrate that: (1) their Class Representatives do not have conflicting interests with other Class Members; and (2) their Class Counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378. Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met. *Goldemberg*, 317 F.R.D. at 401.

Here, Plaintiffs have no conflicts with absent Class Members and have vigorously pursued their claims on their behalf, securing guaranteed recovery of their behalf. Likewise, Class Counsel are highly experienced consumer class action attorneys who have no conflicts with the unnamed Class Members' interests. Accordingly, adequacy is met.

## 2.    The Settlement Class Satisfies All Rule 23(b)(3) Prerequisites

In addition to satisfying the Rule 23(a) prerequisites, the Settlement Class also satisfies Rule 23(b)(3) predominance and superiority prerequisites because commons questions of fact and law "predominate over any questions affecting only class members" such that "a class action is superior to other available methods for fairly adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### (i)    Predominance

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole. . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 108 (2d Cir. 2007). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. Cnty. of Montgomery,* 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 139 (2d Cir. 2001)).

Here, Plaintiffs and Class Members' claims arise from the same factual allegations and legal theory: that Defendants misrepresented and omitted key material facts about the Class Products. These common issues, which are determinable using class wide evidence, predominate over any individual variations among the Settlement Class.

(ii)    <u>Superiority</u>

To establish superiority, Plaintiffs must demonstrate that "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir. 1968); *Amchem,* 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (internal citation omitted).

Here, there is no question that a class action is the best and most efficient mechanism to fairly and efficiently resolve Plaintiffs' and Class Members' claims. Class adjudication will "conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually." *Morris v. Affinity Health Plan, Inc.*, 859 F.Supp.2d 611, 617 (S.D.N.Y. 2012). Thus, certification is superior because it will "not only achieve economies of scale for Class Members," but will also "avoid[] the waste and delay [of] repetitive proceedings and prevent[] inconsistent adjudications." *Id*.

## C.    The Court Should Appoint Plaintiffs' Counsel as Class Counsel

The Court should appoint the following attorneys of record as Class Counsel: Jeffrey I. Carton, Esq. of Denlea & Carton LLP, 2 Westchester Park Drive, Suite 410, White Plains, NY 10604, Will Wright, Esq. of The Wright Law Office, P.A., 515 N. Flagler Drive, Suite 350, West Palm Beach, FL 3340, and Thiago Coelho, Esq. of Wilshire Law Firm, PLC, 660 S Figueroa St., Sky Lobby, Los Angeles, CA 90017.[4]

---

[4] Declarations from each of the proposed Class Counsel are attached, attesting to their respective qualifications to help represent the Class.

Rule 23(g) sets forth four criteria for appointing class counsel in a class action settlement: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law; and" (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Here, Plaintiffs' counsel satisfies each of these criteria. Plaintiffs' counsel has done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims. Plaintiffs' counsel are all highly-experienced attorneys who are well versed in litigating complex class action consumer cases, and are thus more than sufficiently knowledgeable of the applicable law. Finally, Plaintiffs' counsel are willing to commit substantial resources to representing the Class to ensure an efficient and manageable settlement process.

**D.    The Court Should Approve the Notice Program**

The threshold requirement concerning the adequacy of Class Notice to absent Class Members is whether due process is met through "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To that end, this Court has broad power to approve a variety of procedures to use for providing notice so long as those procedures are consistent with the standards of reasonableness that the due process clauses in the U.S. Constitution impose. *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) (holding the District Court "has virtually complete discretion as to the manner of giving notice to class members" (internal citations omitted)).

"It is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 164

24

F.R.D. 362, 368 (S.D.N.Y.) *aff'd sub nom. In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996); *see also Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir. 1988) ("The proper inquiry is whether the state acted reasonably in selecting means likely to inform persons affected, not whether each property owner actually received notice."); *Buxbaum v. Deutsche Bank AG*, 216 F.R.D. 72, 80 (S.D.N.Y. 2003) ("[Federal Rule of Civil Procedure] 23(c)(2) provides that 'the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'").

Here, the proposed Notice Plan satisfies each of the notice requirements set forth under Fed. R. Civ. P. 23(c). The proposed notices set forth clearly and concisely, in plain language: (1) basic information about the Actions, (2) the definition of the Class certified, (3) that a Class Member may enter an appearance through an attorney if they so desire, (4) that the Court will exclude from the Class any Class Member who requests exclusion, (5) the time and manner for requesting exclusion, and (6) the binding effect of a class Judgment. Fed. R. Civ. P. 23(c)(2)(B); *see also* Agreement,  Exs. 1-2. The proposed notices also provide Class Members with the entire Settlement Agreement and inform Class Members of the date of the Final Approval Hearing. Agreement, Exs. 1-2. This detailed information far exceeds what is required and what Courts in this Circuit have approved. *See In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").

Additionally, the Notice Plan also provides for a robust media campaign consisting of state-of-the-art targeted internet notice, social media notice, and search engine marketing. Agreement, Sec. 6.2. This will help ensure that as many Class Members become aware of the Settlement as

possible. Azari Decl. ¶ 40. Accordingly, Plaintiffs respectfully request that the Court approve the proposed Notice Program.

### E.    The Court Should Schedule the Final Approval Hearing

Finally, pursuant to Rule 23(e)(2), Plaintiffs request that the Court schedule the time, date, and place of the Final Approval Hearing.

### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and issue an Order: (1) appointing Plaintiffs to serve as Class Representatives and appointing Denlea & Carton LLP, The Wright Law Office, and Wilshire Law Firm, PLC as Class Counsel, (2) certifying the Settlement Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure for the purpose of consummating the Settlement Agreement; (3) preliminarily approving the Settlement; (4) approving the form and manner of the class action settlement Notice Plan; (5) setting a date and time for the Final Approval Hearing; and (6) for such further relief as this Court deems just and proper.

Dated: January 9, 2026

Respectfully submitted,

/s/ Jeffrey I. Carton
Jeffrey I. Carton
Catherine H. Friesen
Denlea & Carton LLP
2 Westchester Park Drive, Suite 410
White Plains, NY 10604
Telephone: (914) 331-0100
jcarton@denleacarton.com
cfriesen@denleacarton.com

William Wright
The Wright Law Office, P.A.
515 N. Flagler Drive, Suite 350
West Palm Beach, FL 33401
Telephone: (561) 514-0904
willwright@wrightlawoffice.com

Thiago Coelho
Wilshire Law Firm, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010
Telephone: (213) 381-9988 Ext 229
thiago.coelho@wilshirelawfirm.com

*Attorneys for Plaintiffs*