UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JANA RABINOWITZ, SHANA DENNY, and
YOLANDA PITRE,

                     *Plaintiffs*,


           -against-


COLGATE-PALMOLIVE COMPANY and TOM'S
OF MAINE, INC.,

                     *Defendants*.
------------------------------------------------------------------X
**A P P E A R A N C E S:**

**FILED**
**CLERK**

**3/6/2026**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**


**MEMORANDUM**
**AND ORDER**

2:25-cv-06996 (JMW)

       **Jeffrey I. Carton**
       Denlea & Carton LLP
       2 Westchester Park Drive, Suite 410
       White Plains, NY 10604

       **Will Wright**
       The Wright Law Office, P.A.
       515 N. Flagler Drive Suite 350
       West Palm Beach, FL 33401

       **Thiago Coelho**
       Wilshire Law Firm, PLC, Class Action
       660 S. Figueroa St., Sky Lobby
       Los Angeles, CA 90017
       *Attorneys for Plaintiffs*

       **Craig Thomas McAllister**
       **Hannah Y Shay Chanoine**
       **Nexus Uzoma Sea**
       O'Melveny & Myers, LLP
       1301 Avenue of the Americas, Suite 1700
       New York, NY 10019-6022
       *Attorneys for Defendants*

1

**WICKS,** Magistrate Judge:

Plaintiffs Jana Rabinowitz, Shana Denny, and Yolanda Pitre ("Plaintiffs") commenced this class action against Colgate-Palmolive Company and Tom's of Maine, Inc. ("Defendants") on behalf of a nationwide group of consumers who purchased certain toothpaste products originating from Defendant Tom's of Maine facility. (*See generally* ECF No. 1.) Plaintiffs contend that Defendants' packaging and labelling of Tom's of Maine toothpaste misled reasonable consumers who would not have purchased those products had they known about the conditions described in a November 5, 2024 letter that the U.S. Food and Drug Administration ("FDA") issued to Defendants which raised concerns that certain conditions at the Tom's of Maine facility, like the water quality, were not in compliance with the FDA's manufacturing practices. (*See id.* at ¶¶ 7-9, 15-19, 21.)

Before the Court is Plaintiffs' unopposed Motion for Preliminary Approval of Class Action Settlement. (ECF No. 17.) Plaintiffs seek an order: (i) appointing Plaintiffs to serve as Class Representatives and appointing Denlea & Carton LLP ("D&C"), The Wright Law Office ("Wright Law Office"), and Wilshire Law Firm, PLC ("Wilshire") as Class Counsel, (ii) certifying the Settlement Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure for the purpose of consummating the Settlement Agreement; (iii) preliminarily approving the Settlement Agreement; (iv) approving the form and manner of the class action settlement Notice Plan; (v) appointing Epiq Systems, Inc. ("Epiq") as Class Administrator; and (vi) setting a date and time for the Final Approval Fairness Hearing. (*Id.*; ECF No. 17-2, Carton Decl. at ¶ 1.)

For the reasons set forth below, Plaintiffs' Motion (ECF No. 17) is **GRANTED.**

2

**BACKGROUND**

i.   Factual History

Defendants manufacture and distribute over-the-counter oral care and personal care products nationwide. (ECF No. 1 at ¶¶ 4, 12.) Plaintiffs are consumers who purchased toothpaste and other oral care products from Defendant Tom's of Maine. (*Id.* at ¶¶ 4-6.) On November 5, 2024, the FDA issued a warning letter to Defendants "following an inspection of Tom's of Maine's drug manufacturing facility conducted in May 2024, during which the FDA investigator observed specific violations of the Federal Food, Drug, and Cosmetic Act." (*Id.* at ¶ 15.) Specifically, the investigator found that Defendant Tom's of Maine had used water that had repeatedly shown presence of bacteria, failed to investigate or assess the impact of the "finished products" or the "performance of the water system," released products containing bacteria, acknowledged it was using insufficient criteria to evaluate its water systems, and failed to maintain its manufacturing facilities in "a good state of repair." (*Id.* at ¶¶ 15-19)

Following the November 2024 release of the FDA letter detailing these issues, Plaintiffs stopped using and/or discarded their Tom's of Maine toothpaste and other oral care products. (*See id.* at ¶¶ 24, 30.) Plaintiffs argue that in purchasing the toothpaste and other oral care products, Plaintiffs relied upon representations by Defendants that the products were "naturally sourced," "good for you," and made with "rigorous ingredient and packaging standards." (*Id.* at ¶ 8.) As Plaintiffs contend, "Plaintiffs would not have purchased the product had they known it was contaminated" and have subsequently suffered economic injuries resulting from their purchases. (*Id.* at ¶ 9.)

Accordingly, Plaintiffs brought this action on behalf of themselves and all others similarly situated pursuant Federal Rule of Civil Procedure 23(a), "(b)(1), (2), and/or (3), and/or Rule 23(c)(4)." (*Id.* at ¶ 31.) Plaintiffs assert causes of action for: (i) intentional misrepresentation, (ii) negligent misrepresentation, (iii) breach of express warranty, (iv) fraudulent concealment—fraud by omission, (v) unjust enrichment, (vi) violation of the California Unfair Competition Law, (vii) violation of the California False Advertising Law, (viii) violation of the Florida Unfair & Deceptive Trade Practices Act, and (ix) violation of the New York General Business Law § 349. (*Id.* at pp. 12-25.)

ii.      Procedural History

Prior to filing this action, on May 28, 2025, the parties engaged in private mediation with the Hon. Suzanne H. Segal which resulted in a nationwide resolution of all claims arising out of the allegations set forth in several previously filed lawsuits[1] including the present one. (*See* ECF No. 6; ECF No. 17-1 at pp 1-2; ECF No. 17-3.) As Plaintiffs assert, the "proposed resolution is the hallmark of a fair, adequate, and reasonable compromise of disputed claims, in which each side has been capably represented by zealous, well-informed counsel" and the settlement "represents a very favorable result for the Class." (ECF No. 17-2, Carton Decl. at ¶ 6.)

On December 19, 2025, Plaintiffs, on behalf of themselves and all others similarly situated, commenced this class action. (ECF No. 1.) The parties then consented to the undersigned's jurisdiction for all purposes on January 5, 2026. (ECF Nos. 13, 16.) Not long after, on January 9, 2026, Plaintiffs filed the Motion for Preliminary Approval of Class Action

---

[1] Those actions are *Denny v. Colgate-Palmolive Co.*, No. 24-cv-02129 (M.D. Fla.); *Rabinowitz v. Colgate-Palmolive Co.*, No. 622019/2024 (N.Y. Sup. Ct.); *Pitre v. Colgate-Palmolive Co.*, No. 4:24-cv-09318 (N.D. Cal.); *Foreman v. Colgate-Palmolive Co.*, No. 3:25-cv-00314 (S.D. Cal.); and *Zetterstrom v. Colgate-Palmolive Co.*, No. 25-cv-02151 (S.D.N.Y.). (ECF No. 6.)

4

Settlement. (ECF No. 17.) The next day, the undersigned set February 10, 2026 as the opposition date, yet no opposition has been filed. (*See* Electronic Order dated January 10, 2026.)

## THE PROPOSED SETTLEMENT

The total settlement fund amount is $2,900,000 ("Settlement Fund"). (ECF No. 17-3 at § 3.1.) According to the Settlement Agreement, the Settlement Fund shall be used to pay "all Settlement expenses, including Notice and Other Administrative Costs; CAFA Notice, the Fee Award; Service Awards; and Class Members' Claims." (*Id.*) Further, Defendants shall make payments in accordance with the following schedule: (i) amounts equal to the cost of publishing the Notice Plan, CAFA Notice, and other administrative costs are to be paid within ninety days of when the amounts are invoiced to Defendants; (ii) costs for claims validation or other claims processing related costs will be paid within ninety days of when such amounts are invoiced to Defendants; and (iii) to cover the Fee Award and Service Awards and payment of Approved Claims shall  be remitted to the Claims Administrator within ten business days of the Effective Date (when the Judgment becomes final). (*Id.* at § 3.3.)

The Settlement Class is comprised of "all purchasers within the United States that, between November 21, 2020 through the Preliminary Approval Date, purchased for use and not for resale or distribution purposes, one or more of the Class Products described in Section 2.14," which are "any Tom's toothpaste product purchases." (*Id.* at §§ 2.8, 2.14.) The Class exclusions include: "the Honorable James M. Wicks, and members of his immediate family; (2) Colgate; (3) Tom's; (4) any entity in which Colgate or Tom's has a controlling interest; (5) any of Colgate's and Tom's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (6) any Persons who timely exclude themselves from the Settlement Class." (*Id.* at § 2.8.)

Moreover, the Settlement Agreement details that Class Notice shall be effectuated by the Claims Administrator as outlined in the Notice Plan which itself provides "for a robust media campaign consisting of state-of-the-art targeted internet notice, social media notice, and search engine marketing," a "dedicated Settlement Website," and "toll-free telephone line where Class Members can learn more about their rights and options pursuant to the terms of [the] Settlement Agreement." (*Id.* at § 6.2.) Class Notice will commence within thirty days following the entry of this Court's Order on the Motion for Preliminary Approval. (*Id.* at § 6.3.)

The Settlement Agreement further provides that the parties agreed that the Class Representatives and Special Plaintiff upon approval may receive up to $1,000 each as service award as "compensation for the time and effort undertaken in pursuing this litigation." (*Id.* at § 4.1.) Lastly, Class Counsel may receive one-third of the Settlement Fund, which includes attorneys' fees and other costs and expenses incurred within this action. (*Id.*)

## **DISCUSSION**

Plaintiffs seek class certification for settlement purposes pursuant to Rules 23(a) and 23(b)(3). (ECF No. 17 at p. 1.) Plaintiffs' request includes an Order to preliminarily approve the Settlement Agreement, appoint Plaintiffs as Class Representatives, appoint Jeffrey I. Carton of D&C, Will Wright from the Wright Law Office, and Thiago Coelho from Wilshire as Class Counsel, approve the form and manner of the Settlement Agreement's Notice Plan, authorize Epiq as Class Administrator, and schedule a Final Approval Fairness Hearing. (*Id.* at pp. 1-2; ECF No. 17-1 at pp. 10, 30.) Each request is addressed accordingly.

### A. **Conditional Class Certification**

"Before certifying a class, a district court must determine that the party seeking certification has satisfied the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation." *Abarza v. Spirit Pharms. LLC*, No. 23-CV-03637 (JMW), 2025 WL 1519147, at *3 (E.D.N.Y. May 28, 2025) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997)). Additionally, where, as here, a plaintiff moves to certify the class pursuant to Rule 23(b)(3), plaintiff is also required to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016) (quoting Fed. R. Civ. P. 23(b)(3)). This is satisfied if the resolution of the legal and factual questions of each class member's case can be achieved through generalized proof, and those issues are more substantial than the issues which are subject to individualized proof. *Id*.

Moreover, the Second Circuit has also recognized an implicit requirement of "ascertainability" within Rule 23(a). *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) ("The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries."). Rule 23(a) "does not set forth a mere pleading standard," but instead requires that the proponent of certification "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

The requirements for Rule 23 class certification are subject to a rigorous analysis and must be established by a preponderance of the evidence. *Poplawski v. Metroplex on the Atl.,*

*LLC*, No. 11-CV-3765, 2012 WL 1107711, at *5 (E.D.N.Y. Apr. 2, 2012). Any factual disputes relevant to the Rule 23 requirements must be resolved and any doubts should be resolved in favor of certification. *Spencer v. No Parking Today, Inc.*, No. 12-CV-6323 (ALC)(AJP), 2013 WL 1040052, at *10 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, No. 12-CV-6323 (ALC) (AJP), 2013 WL 2473039 (S.D.N.Y. June 7, 2013). At bottom, the District Court has "substantial discretion in determining whether to certify a class." *Id.*

### i.       Rule 23(a)(1): Numerosity

The numerosity prong of Rule 23(a) requires that individuals in the proposed class be so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). In the Second Circuit, numerosity is presumed when the proposed class is greater than or equal to forty members. *Marcus v. AXA Advisors, LLC*, 307 F.R.D. 83, 95 (E.D.N.Y. 2015); *see Newman v. Bayer Corp.*, 348 F.R.D. 567, 578 (S.D.N.Y. 2025) (same).

This presumption, however, "does not provide rigid parameters, and the ultimate issue is whether the class is too large to make joinder practicable." *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 269 F.R.D. 252, 255 (S.D.N.Y. 2010) (internal quotation marks and footnote omitted); *see Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers.") (citing *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968)). Thus, in considering the practicability of joinder, courts focus on the factors articulated by the Second Circuit in *Robidoux*:

> (1) judicial economy arising from the avoidance of a multiplicity of actions; (2) geographic dispersion of class members; (3) financial resources of class members; (4) the ability of claimants to institute individual suits; and (5) requests for prospective injunctive relief which would involve future class members.

987 F.2d at 936.

Here, the Settlement Class includes all purchasers within the United States who, between November 21, 2020 and the Preliminary Approval Date, purchased any Tom's of Maine toothpaste products. (ECF No. 17-10, Azari Decl. at ¶ 23.) The estimated number of Class Members is in the tens of thousands. (ECF No. 17-1 at p. 26.) Therefore, the numerosity requirement is easily established.

### ii.      Rule 23(a)(2) and (3): Commonality/Typicality

"The commonality and typicality requirements tend to merge into a single inquiry." *Avila v. Ardian Corp.*, No. 18-CV-4795 (FB) (TAM), 2022 WL 3370024, at *3 (E.D.N.Y. Aug. 16, 2022) (quotes omitted); *Marisol A*, 126 F.3d at 376 ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)"). Rule 23(a)(2) requires a plaintiff to show "questions of law or fact common to the class" and Rule 23(a)(3) requires that plaintiff's claims "are typical of the claims . . . of the class." *Avila*, 2022 WL 3370024, at *3; Fed. R. Civ. P. 23(a)(2)-(3). This can be "easily satisfied" by a single common issue. *Avila*, 2022 WL 3370024, at *3; *Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649 (PKC) (ST), 2022 WL 900603, at *6 (E.D.N.Y. Mar. 28, 2022) ("Even a single common question will suffice") (quotes omitted). Critically, a plaintiff must demonstrate the proposed class has suffered the same injury. *Avila*, 2022 WL 3370024, at *3.

Typicality, "'requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]'" *Cheng v. HSBC Bank USA, N.A.*, No. 23-7383, 2024 WL 4835268, at *1 (2d Cir. Nov. 20, 2024) (quoting Fed. R. Civ. P. 23(a)(3)). This requirement "allows courts to consider whether 'a putative class representative is subject to unique defenses

9

which threaten to become the focus of the litigation[.]'" *Id.* (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)).

Here, the factual and legal theories underlying Plaintiffs' claims are the same as those of the class members, particularly, whether Defendants were aware of the issues raised in the FDA warning letter, whether Defendants were negligent in preventing, maintaining, or remedying the concerns raised in the FDA letter, whether Defendants' made misrepresentations on the products' labels, and whether Plaintiffs' and other class members relied upon those representations when purchasing the products resulting in economic harm. *See Bowling v. Johnson & Johnson*, No. 17-cv-3982 (AJN), 2019 WL 1760162, at *4 (S.D.N.Y. Apr. 22, 2019) (collecting cases finding the commonality requirement met where claims that purchasers were defrauded through representations on a product's label were common to plaintiffs and class members); *see also Hart v. BHH, LLC*, No. 15cv4804, 2017 WL 2912519, at *6 (S.D.N.Y. July 7, 2017) (determining commonality prong satisfied because the class members "relied on the same alleged misrepresentations of fact" regarding the product's efficacy, and "suffered the same economic harm"). Moreover, all claims are made based on state consumer protection laws and/or implied warranty claims. *See Blessing v. Sirius XM Radio Inc.*, No. 09 CV 10035 (HB), 2011 WL 1194707, at *3 (S.D.N.Y. Mar. 29, 2011) (finding common questions of law among state consumer protection statutes based on the allegedly "false and deceptive information" that harmed plaintiffs and class members). Indeed, "whether members of the proposed class sustained damages as a result of the alleged misconduct" is a common issue of fact to all class members. *In re Didi Global Inc. Sec. Litig.*, No. 21-CV-5807 (LAK) (VF), 2025 WL 1909295, at *9 (S.D.N.Y. July 7, 2025).

It therefore follows that typicality is also met because Plaintiffs' claims stem from the same course of conduct as the Settlement Class Members' claims—that Defendants sold Tom's of Maine toothpaste products to Plaintiffs and class members who would not have purchased those products had they known about the conditions described in the FDA warning letter. (*See* ECF No. 17-1 at p. 28); *see also Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 400 (S.D.N.Y. 2016) (holding that the typicality requirement was satisfied because "[c]onsumers of the same product" that were "exposed to the same marketing and packaging" have "entirely the same claims with at most 'minor variations' in the facts surrounding their purchase of the products"); *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 45–46 (S.D.N.Y. 2013) (quoting *Robidoux*, 987 F.2d at 936–37) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."). Therefore, commonality and typicality are both satisfied.

### iii.    Rule 23(a)(4): Adequacy of Representation

"Determination of adequacy typically entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007); *Cheng*, 2024 WL 4835268, at *1 (internal citations omitted) ("The test for adequacy, ... is twofold: 'the proposed class representative [1] must have an interest in vigorously pursuing the claims of the class, and [2] must have no interests antagonistic to the interests of other class members.'")

Here, there is no indication that Plaintiffs have interests that are antagonistic to or at odds with those of the proposed Class Members. Rather, Plaintiffs' interests—seeking relief for the alleged misrepresentations and fraud incurred from their purchase of Tom's of Maine toothpaste following the FDA letter—mirrors those of the proposed class. *See Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 136 (E.D.N.Y. 2020) (determining the adequacy prerequisite was met because "the remedies that Plaintiffs seek would provide the same relief to each member of the proposed classes") Plaintiffs assert that they have "vigorously pursued their claims on [the class members'] behalf" and "have no conflicts with the unnamed Class Members' interests." (ECF No. 17-1 at p. 28); *Carbone v. Limited Run Games, Inc.*, No. 24-cv-08861 (NJC) (JMW), 2025 WL 3481450, at *6 (E.D.N.Y. Aug. 21, 2025) (finding adequacy of representation satisfied considering plaintiffs' assertions that they "vigorously pursued and protected the interest of the Class" and did not "have any interest adverse to, or in conflict with, the interests of the Class"), *report and recommendation adopted* (E.D.N.Y. Nov. 21, 2025).

Next, Plaintiffs contend that Class Counsel "are highly experienced consumer class action attorneys" who are "well versed in litigating complex class action consumer cases, and are thus more than sufficiently knowledgeable of the applicable law." (ECF No. 17-1 at pp. 28, 31.) In fact, D&C attorneys have been certified as class counsel and have prosecuted numerous class actions involving consumer protection, consumer fraud, and warranty claims over the past sixteen years. (*See* ECF No. 17-2, Carton Decl. at ¶¶ 21, 22.) Jeffrey I. Carton, a Columbia Law School graduate and former litigation associate at Cravath, Swaine, and Moore, served as one of the "lead lawyers at [his] firm prosecuting this action" and had previously been appointed as interim co-lead counsel in large consumer class actions in this District as well as in California. (*See id.* at ¶¶ 18, 21.)

12

Similarly, the Wright Law Office "specializes in prosecuting plaintiffs' claims to recover losses for consumers and investors nationwide" and has a "primary practice" dedicated for enforcing consumer rights in state and federal courts nationwide. (ECF No. 17-9, Wright Decl. at ¶ 2.) Will Wright is the firm's managing partner who possesses more than 25 years of experience litigating consumer cases. (*Id.* at ¶ 3.) During his tenure at the Wright Law Firm, he has prosecuted class actions and secured settlements against major corporations and has been "heavily involved" in other class-action lawsuits in the pharmaceutical and food-labeling industries. (*Id.* at ¶¶ 4-5.) Prior to founding the firm, Wright practiced at one of the nation's leading plaintiffs' class-action firms, handling complex, multi-million-dollar cases. (*Id.* at ¶ 3.)

Likewise, Wilshire has been recognized as one of the nation's Best Law Firms each year since 2020 according to U.S. News & World Report. (ECF No. 17-8, Coelho Decl. at ¶ 2.) Thiago M. Coelho is a partner at Wilshire and has been selected by the National Trial Lawyers as a "Top 25 Class Action Trial Lawyer," "Top 40 under 40" attorney, "Top 10 Data Privacy Lawyer." (*Id.* at ¶ 3.) He has extensive experience litigating consumer class actions, including those involving false advertising, over the past five years and has achieved settlements in those class actions ranging from $2.9 million to $49.5 million. (*Id.* at ¶ 3(a)—(k)).

It is clear that D&C, the Wright Law Firm, and Wilshire's class action experience more than qualifies them to be adequate class counsel, thus satisfying the adequacy requirement. *See In re Waste Mgmt. Sec. Litig.*, No. 22-CV-4838 (LGS), 2025 WL 958467, at *14 (S.D.N.Y. Mar. 31, 2025) (appointing class counsel based upon counsel's extensive experience); *Zaslavskiy v. Weltman, Weinberg & Reis Co., LPA*, No. 18-CV-4747 (DLI) (RER), 2022 WL 10033589, at *3 (E.D.N.Y. Jan. 5, 2022) (finding the adequacy of representation requirement satisfied

considering class counsel was demonstrably "able, qualified, and experienced, with extensive experience litigating consumer protection cases, including as class counsel").

### iv.  *Ascertainability*

"The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d at 269. What the ascertainability requirement does not require is a showing of administrative feasibility at the class certification stage. *Id.* at 265. Here, the proposed class is clearly ascertainable as it can be defined with objective criteria. That is, the class will consist of individuals who purchased one of more of Tom's of Maine toothpaste products between November 21, 2020 through the date of preliminary approval. (ECF No. 17-2, Carton Decl. at ¶ 8.) Thus, Plaintiffs have satisfied the requirement of ascertainability.

In sum, Plaintiffs have satisfied the requirements of Rule 23(a).

### v.  *Rule 23(b)(3): Predominance and Superiority*

Having satisfied the requirements set out in Rule 23(a), Plaintiff must also demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" under Rule 23(b)(3). Fed. R. Civ. P. 23(b)(3); *see Avila*, 2022 WL 3370024, at *4.

### a.  Predominance

Generally, the predominance requirement is satisfied where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re Waste Mgmt. Sec. Litig.*, 2025 WL 958467, at

*3 (quoting *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020)). The focus is on whether there are questions of liability common to the class members. *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-CV-442, 2012 WL 170049, at *12 (E.D.N.Y. 2012). "[A] Court must consider the elements of each cause of action, and determine whether those elements can be satisfied by common, class-wide proof." *Newton v. R.C. Bigelow, Inc.*, No. 22-CV-5660 (LDH)(SIL), 2025 WL 994721, at *8 (E.D.N.Y. Feb. 14, 2025), *report and recommendation adopted*, No. 22-CV-5660 (LDH) (SIL), 2025 WL 965690 (E.D.N.Y. Mar. 31, 2025) (quoting *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 509 (S.D.N.Y. 2011)).

The Complaint alleges that Defendants misrepresented and omitted key material facts about the Tom's of Maine toothpaste and oral care products which resulted in economic damages to those who purchased those products. (*See generally* ECF No. 1.) These common issues of Defendants' alleged failure to disclose the information they were provided within the FDA warning letter resulting in the alleged harm predominates over any "varying factual or legal theories that may exist among the Class Members." *Abarza*, 2025 WL 1519147, at *6. The few, if any, individualized factual issues amongst different Class Members do not have any weight on the overarching issue regarding whether Defendants engaged in deceptive and misleading business practices with respect to the manufacturing, marketing, and sale of Tom's of Maine products. Indeed, the questions of law and fact that are common to the Class predominate over any individual questions and can be answered with the same evidence. *Maroney v. Woodstream Corp.*, No. 19-CV-8294 (KMK), 2025 WL 945874, at *13 (S.D.N.Y. Mar. 28, 2025) (collecting product labelling cases where issues regarding misrepresentations on the labels predominated individual claims); *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) (noting that "[f]raud actions must therefore be separated into two categories: fraud claims based on uniform

15

misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations. The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof"). For these reasons, the predominance requirement is met.

> b. Superiority

"The superiority requirement is satisfied where a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18-CV-885 (FB) (SMG), 2020 WL 8642081, at *4 (E.D.N.Y. Oct. 8, 2020), *report and recommendation adopted*, No. 18-CV-885 (FB) (LB), 2021 WL 722412 (E.D.N.Y. Feb. 24, 2021) (quotes omitted). Rule 23(b)(3) sets forth four non-exhaustive factors relevant to the superiority inquiry: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). A class action is superior where they "facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13-CV-2541 (KNF), 2014 WL 1378922, at *6 (S.D.N.Y. Mar. 25, 2014).

A class action here would be superior to any other available method for fairly and efficiently adjudicating this controversy. The expense of litigation and the size of numerous individual claims warrants a finding that proceeding as a class action here would be "more economically sensible." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 177 (S.D.N.Y. 2014).

Additionally, as Plaintiffs' contend, a class action "is the best and most efficient mechanism to fairly and efficiently resolve Plaintiffs' and Class Members' claims." (ECF No. 17-1 at p. 30.) "Because there are hundreds of thousands of possible actions, that could be brought at different times in different venues, the superiority requirement is met." *Carbone*, 2025 WL 3481450, at *8. Accordingly, because predominance and superiority have been met, the requirements under Rule 23(b)(3) have been satisfied and the Class is preliminarily certified.

### B. Preliminary Approval of the Class Settlement

Preliminary approval is the first step in the settlement of a class action. *Abarza*, 2025 WL 1519147, at *7 (citing *Lizondro-Garcia*, 300 F.R.D. at 179). If approved, plaintiffs next provide notice of a hearing where class members and settling parties are provided an opportunity to be heard before final court approval. *Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791, 798 (S.D.N.Y. 2020).

At this preliminary stage, the court is only tasked with evaluating the settlement for fairness, adequacy, and reasonableness, and to ensure the agreement is not a product of collusion. *Lora v. To-Rise, LLC*, 452 F. Supp. 3d 5, 7 (E.D.N.Y. 2019). "To grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Id*. (quoting *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir.1980)).

The legal standard for preliminary approval was aptly described as follows:

[w]here parties seek to settle claims brought by a plaintiff on behalf of a proposed class, the court must review the proposed class action settlement to ensure it is fair, reasonable, and adequate. Courts apply a three-step process of review. The court first conducts a preliminary evaluation of the fairness of the proposed settlement agreement to determine whether to give notice of the proposal to all class members. The second step consists of providing notice of a hearing ... to class members and holding a hearing to ensure that class members and settling parties are provided the opportunity to be heard[.] The court turns to the third step—final approval—only

> if the Court has granted preliminary approval and afforded notice of the hearing and an opportunity to be heard to all class members.

*Carbone*, 2025 WL 3481450, at \*8 (citing *C.K. through his next friend P.K. et al. v. McDonald et al.*, No. 22-CV-1791 (NJC) (JMW), 2025 WL 2388687, at \*6 (E.D.N.Y. Aug. 18, 2025)) (internal citations and quotations omitted).

Rule 23(e)(2), as *amended* in 2018, provides certain factors for the court to consider upon preliminary approval. Specifically, whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) The costs, risks, and delay of trial and appeal;
>> (ii) The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) The terms of any proposed award of attorney's fees, including timing of payment;
>> (iv) Any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Prior to the 2018 amendment, Rule 23(e)(2) the Second Circuit examined "the fairness, adequacy, and reasonableness of a class settlement according to the '*Grinnell* factors.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors include:

> (1) The complexity, expense and likely duration of the litigation;
> (2) The reaction of the class to the settlement;
> (3) The stage of the proceeding and the amount of discovery completed;
> (4) The risks of establishing liability;
> (5) The risks of establishing damages;
> (6) The risks of maintaining a class action through the trial;
> (7) The ability of the defendants to withstand a greater judgment;

18

(8) The range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) The range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell Corp.*, 495 F.2d at 463.

The "Rule 23(e) factors [ ] add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Indeed, there is significant overlap between the two sets of factors. *Id*. Both sets of factors are considered below.

### i.    *Adequate Representation by Class Representative and Class Counsel*

As set forth above in Section A.iii, *supra*, Plaintiffs and the proposed Class Counsel are adequate representation for the Class. Here, Plaintiffs' interests are adequately aligned with the Class Members' interests and proposed Class Counsel, D&C, the Wright Law Office, and Wilshire are sufficiently experienced and qualified to represent the Class. This factor, therefore, weighs in favor of granting preliminary approval. *See Buchanan*, 2020 WL 8642081 at *6.

### ii.    *Arms-Length Negotiations After Meaningful Discovery*

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116. This factor addresses the same substance as *Grinnell* Factor 3 (the stage of the proceedings and the amount of discovery completed). The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)) (internal quotation marks omitted).

19

Here, the record amply supports the conclusion that the parties negotiated at arms-length. The parties were engaged in extensive discovery during mediation through which they were able to understand the strengths and weakness of their positions, thereby allowing the parties an opportunity to negotiate a well-informed, reasonable settlement of Plaintiffs' claims. Indeed, Plaintiffs aver that settlement only occurred after this meaningful exchange of information. (*See* ECF No. 17-1 at p. 25.) Therefore, this factor weighs in favor of granting preliminary approval.

### iii.    Adequate Relief for the Class

The Court is required to consider whether the settlement provides adequate relief to the putative class. *See* Fed. R. Civ. P. 23(3)(2)(C). This includes a consideration of "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class ...; (iii) the terms of any proposed award of attorney's fees ...; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id*.

### a.    Costs, Risks, and Delay of Trial and Appeal

This Rule 23(e)(2) factor "subsumes several *Grinnell* factors," including the complexity, expense and likely duration of litigation (*Grinnell* Factor 1), risks of establishing liability (*Grinnell* Factor 4), the risks of establishing damages (*Grinnell* Factor 5), and the risks of maintaining the class through trial (*Grinnell* Factor 6). *See Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (quoting *In re Payment Card*, 330 F.R.D. at 36.) "Class action suits have a well-deserved reputation as being most complex." *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *5 (E.D.N.Y. Feb. 11, 2021). This case is no exception.

Here, although the parties completed informal exchange of discovery during the negotiation process, it is quite clear that if this case proceeds, it would result in significant

20

additional expenses and delay. As Plaintiffs contend, continued litigation would entail dispositive motion practice, extensive class-wide discovery to establish liability and damages, a trial which would be "lengthy and consume tremendous time and resources," and an appeal of the judgment reached. (*See* ECF No. 17-1 at pp. 15-16.) Moreover, Plaintiffs would need to certify and maintain a class over Defendants' opposition. (*Id.* at p. 5.) "Given the above-mentioned risks, costs, and delay of trial and possible appeal would be significant, this factor to weigh in favor of preliminary approval." *Carbone*, 2025 WL 3481450, at \*10 (concluding *Grinell* factors 1, 4, and 6 collectively weighed in favor of granting preliminary approval).

### b.  *Effectiveness of the Proposed Method of Distributing Relief to the Class*

An adequate distribution method is one that can "deter or defeat unjustified claims" without imposing an undue demand on class members. *Id*. (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). The method does not need to be perfect, it just needs to have a reasonable, rational basis, especially when recommended by experienced counsel. *Id*.

Here, Plaintiffs ask the Court to authorize the retention of Epiq—"an industry leader in class action administration, having implemented more than a thousand successful class action notice and settlement administration matters"—as Class Administrator who will be directed to send notice via numerous electronic means in accordance with the Notice Plan in the Settlement Agreement. (ECF No. 17-10, Azari Decl. at ¶ 4; ECF No. 17-3 at § 6.2). The Notice Plan provides proper measures of correcting any issues that may occur, advises Class Members of their rights, and answers any questions that the Class Members may have. (ECF No. 17-3 at §§ 6.2, 6.3). Epiq will have the responsibility of receiving and processing Class Member claims and distributing Cash Awards to Class Members with Approved Claims. (*Id.* at § 6.1(i)). Epiq will then distribute Approved Claims within thirty days of the Effective Date and any payment

distributed that is not cleared within 180 days after issuance will become null and void. (*Id.* at §§ 5.7, 5.8). Thus, this factor weighs in favor of preliminary approval.

### c. Terms of Any Proposed Attorneys' Fees

The Settlement Agreement states that Class Counsel shall be entitled to an award of reasonable attorneys' fees determined by the Court not to exceed one-third (33.33%) of the Settlement Fund ($2,900,000). (ECF No. 17-3, at § 4.1). "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness." *Rosenfeld*, 2021 WL 508339 at *6 (quotes omitted) (collecting cases); *Cohan v. Columbia Sussex Mgmt., LLC*, No. CV 12-3203 (AKT), 2018 WL 4861391, at *2 (E.D.N.Y. Sept. 28, 2018); *Azogue v. 16 for 8 Hosp. LLC*, No. 13-CV-7899, 2016 WL 4411422, at *6 (S.D.N.Y. Aug. 19, 2016) ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12 CIV. 3693 PGG, 2013 WL 5492998, at *26 (S.D.N.Y. Oct. 2, 2013). Here, Plaintiffs' proposed request for attorneys' fees totaling one-third of the Settlement Amount is well within the range of reasonableness. *Buchanan*, 2020 WL 8642081 at *8. Therefore, this factor weighs in favor of approval.

### d. Any Agreement Required to be Identified Under Rule 23(e)(3)

This factor requires the Court to consider any agreements made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(3). According to the Settlement Agreement, the parties have agreed that the Class Representatives and Special Plaintiff may receive, subject to Court approval, Service Awards up to $1,000 each from the Settlement Fund, as appropriate compensation for their time and effort to this Action. With three Class Representatives, Jana Rabinowitz, Shana Denny, and Yolanda Pitre, and two Special Plaintiffs, William Foreman and

Amanda Zetterstrom, this total amount of $5,000 taken from the $2,900,000 Settlement Fund is more than reasonable. *See Carbone*, 2025 WL 3481450, at *11 (finding that the "total amount of $5,000 taken from the $2,720,000 Settlement Fund is more than reasonable").

In fact, service payments like those here are routinely awarded to named plaintiffs. *See e.g., Campbell v. Bukhari Grp. LLC*, No. 22-CV-2813 (PK), 2025 WL 1874485, at *13 (E.D.N.Y. July 8, 2025) (preliminary approving service award) ("Courts routinely grant requests for service awards in federal class actions"); *Buchanan*, 2020 WL 8642081, at *8 ("'incentive' or 'service' award[s] [are] not uncommon in class action cases and [are] 'meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit'") *Cohan*, 2018 WL 4861391, at *6 ("Service awards are common in class action cases"); *In re 3D Sys. Sec. Litig.*, No. 21-CV-1920 (NGG) (TAM), 2024 WL 50909, at *16 (E.D.N.Y. Jan. 4, 2024) ("Incentive awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs").

As it relates to the Settlement Agreement's release provisions, "[a] settlement cannot be fair, reasonable and adequate if the Class-wide release is overbroad." *Oladapo v. Smart One Energy, LLC*, No. 14-CV-7117 (LTS) (BCM), 2017 WL 5956907, at *14 (S.D.N.Y. 2017), *report and recommendation adopted*, No. 14 CV 7117 (LTS) (BCM), 2017 WL 5956770 (S.D.N.Y. 2017). Here, the Settlement Agreement provides that each Class Member agrees to release the Released Colgate and Tom's Persons from: "any and all past, present, and future claims (except personal injury claims), demands, rights, suits, liabilities, injunctive and/or declaratory relief, and causes of action . . . that any Class Member has, had, or may have against

23

the Released Colgate and Tom's Persons that arise out of the allegations in the Actions . . . or otherwise depend on the same set of operative facts alleged in the Actions that have been brought, could have been brought, or are currently pending in any forum in the United States." (ECF No. 17-3 at § 8.1). This release language is limited to the incident related to the claims that form the basis of this action arising out of the Tom's of Maine's toothpaste and oral care products and is limited to those claims. Therefore, the release is not overbroad, and the Court finds this factor weighs in favor of approval.

### iv.     *Equitable Treatment of Class Members Relative to One Another*

This factor calls the Court to consider whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In other words, "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D).

Here, each Settlement Class Member with an Approved Claim shall be entitled to a *pro rata* portion of the Settlement Fund after first deducting any necessary settlement administration expenses. (ECF No. 17-3 at §§ 5.2, 5.3). The Settlement Agreement treats all Claimants uniformly, particularly, each Claimant will be entitled to receive a *pro rata* distribution regardless of whether they possess a Proof of Purchase. Indeed, Claimants with Proofs of Purchase are entitled to a *pro rata* distribution based on the number of Class Products purchased (capped at three) (*id.* at § 5.3) and Claimants without Proofs of Purchase will still receive a distribution amounting to the manufacturer's suggested retail price which is *also* subject to a class-wide *pro rata* deduction. (*Id.* at § 5.2). Therefore, a *pro rata* distribution share is equitable

24

to all Class Members relative to one another. *See Meredith Corp v. SESAC, LLC*, 87 F.Supp.3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata allocation plan "appear[ed] to treat the class members equitably... and has the benefit of simplicity"). Further the scope of the release applies uniformly to all putative class members. *See In re Payment Card*, 330 F.R.D. at 47 (approving *pro rata* share distribution structure). Therefore, this factor weighs in favor of approval.

### v.    *Ability of Defendants to Withstand Greater Judgment*

This is *Grinnell* Factor 7, which "does not fit neatly within any of the factors enumerated in Rule 23(e)(2)(C) but adds value to the Court's analysis." *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20 CV 456 (RPK) (LB), 2021 WL 7905684, at *10 (E.D.N.Y. May 25, 2021). The idea underlying this factor is that if a defendant could not withstand a judgment greater than the amount provided for in the settlement, the settlement is more likely to be reasonable, fair, and adequate. *Flores v. CGI Inc.*, No. 22-CV-350 (KHP), 2022 WL 13804077, at *8 (S.D.N.Y. Oct. 21, 2022). Plaintiffs state that "Class Counsel does not contend that Defendants could not withstand a greater judgment." (ECF No. 17-1 at p. 26.) As mentioned, the Parties have agreed to settle for $2,900,00.00. Although the agreed upon payment is relatively large, it is less so when considering the size of the Settlement Class. Therefore, this factor is neutral. However, and as Plaintiffs point out, "a defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012).

### vi.    *Reaction of the Class*

At the preliminary approval stage, *Grinnell* Factor 2 is limited at best. *See In re Payment Card*, 330 F.R.D. at 29. Where, as here, Class Members have not yet received notice of the settlement, courts have found it too early to evaluate this *Grinnell* factor. *See Rosenfeld*, 2021

25

WL 508339 at n. 2 ("One of the *Grinnell* factors, the class's reaction to the proposed settlement, cannot be considered until after notice has been provided to the class. Accordingly, the court does not consider that factor at this stage of the proceedings"); *Chang v. Philips Bryant Park LLC*, No. 17 CIV. 8816 (LTS) (SLC), 2019 WL 8105999, at *8 (S.D.N.Y. Oct. 23, 2019), *report and recommendation adopted*, No. 17-CV-8816 (LTS)(SLC), 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020) ("Because the Class Members have not yet received notice of the settlement, it remains too early to evaluate the second *Grinnell* factor."). If preliminary approval is granted, this factor should be analyzed upon sufficient evidence presented by the parties at the final approval stage. *See Chang*, 2019 WL 8105999 at *8.

### vii.    *Reasonableness of the Settlement*

*Grinnell* Factors 8 and 9 requires the Court to consider the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. These factors are often combined for the purposes of analysis. *In re Payment Card*, 330 F.R.D. at 47–48.

Determining whether a settlement amount is reasonable does not necessarily involve "a mathematical equation yielding a particularized sum." *Henry v. Little Mint, Inc.*, No. 12-CV-3996 (CM), 2014 WL 2199427, at *10 (S.D.N.Y. May 23, 2014) (quotes omitted). Rather, it considers a range of reasonableness which recognizes the uncertainties of law and fact and the accompanying costs of litigation. *Id.* For instance, a settlement which allows Class Members to be immediately paid is reasonable even if it means sacrificing a hypothetically larger amount if the matter were to proceed. *Id.*

Here, the Settlement Fund is $2,900,000.00. (ECF No. 17-2, Carton Decl. at ¶ 7.) Plaintiffs assert that the Fund provides the "best possible recovery" for the Class Members in

light of the "attendant risks of further litigation." (ECF No. 17-1 at p. 18.) "[S]ettlements have been approved as reasonable where the settlement provides a 'meaningful benefit' to the class." *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *12 (internal citations omitted). Moreover, "[t]his method is undoubtedly sooner than if each Class Member waited to receive payment after trial, assuming they were successful." *Abarza*, 2025 WL 1519147, at *13. It therefore follows that if the Class were to continue litigation, it may be subject to motion practice (*i.e.*, motion to dismiss, summary judgment) and the other uncertainties that could ensue. *See Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502 (PKC), 2024 WL 4118465, at *12 (E.D.N.Y. Sept. 9, 2024) ("Given the many legal and factual uncertainties involved in litigation, this factor favors settlement approval."). This settlement amount reflects a balance of the strength of the Class Members' claims versus the risk of trial and thus appears to fall within the "range of reasonableness" set out in the eighth and ninth *Grinnell* factors. *See Henry*, 2014 WL 2199427 at *10.

### C. Appointment of Class Counsel

Plaintiffs propose that D&C, the Wright Law Office, and Wilshire be appointed as Class Counsel. (ECF No. 17-1 at p. 30.) If the Court conditionally certifies the proposed Class, Rule 23(c)(1)(B) requires the appointment of class counsel under Rule 23(g). *See* Fed. R. Civ. P. 23(c)(1)(B). Rule 23(g) provides four factors for the Court to consider in evaluating the adequacy and appointing class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(A)(i)–(iv).

First, all three firms have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims. (ECF No. 17-1 at p. 31.) Second, all three

firms outline their extensive experience with class actions, especially in the consumer protection context. (ECF No. 17-2, Carton Decl. at ¶¶ 18-19; ECF No. 17-9, Wright Decl. at ¶ 2; ECF No. 17-8, Coelho Decl. at ¶¶ 3, 5.) Third, Jeffrey Carton is a lead attorney at D&C and, among other things, he focuses on class action and consumer fraud lawsuits nationwide. (ECF No. 17-2, Carton Decl. at ¶¶ 18, 21, 22.) Likewise, the Wright Law Office and William Wright "specializ[e] in prosecuting plaintiffs' claims to recover losses for consumers . . . nationwide." (ECF No. 17-9, Wright Decl. at ¶¶ 2-3.) In addition, Wilshire's knowledge of the applicable law is glowingly apparent considering the reported successes it has had in consumer protection class action lawsuits. (*See* ECF No. 17-8, Coelho Decl. at ¶ 3.) Fourth, the three firms working together illustrate that the resources are great, they have handled class actions before to understand what is required, and their resumes demonstrate their abilities to ensure a full commitment to the class. (*See* ECF Nos. 17-2, 17-8, 17-9.)

Accordingly, D&C, the Wright Law Office, and Wilshire meet the criteria of Rule 23(g) and are hereby appointed as Class Counsel.

## D. **The Proposed Notice of Settlement**

Plaintiffs seek approval of the proposed Notice Plan. (ECF No. 17-1 at pp. 31-32.) Where, as here, parties are both seeking to certify a settlement class and settle a class action, both the requirements of Rule 23(c) (notice for class certification) and Rule 23(e) (notice for settlement or dismissal) must be met. *Chang*, 2019 WL 8105999 at *13. Pursuant to Rule 23(e), the Court is to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Upon ordering notice pursuant to Rule 23(e)(1), Rule 23(c)(2)(B), requires that "the court must direct [that] class members [be provided with] the best notice that is practicable under the circumstances, including individual notice to all members

who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This may be by mail, electronic, or other appropriate means. *Id.*

Class Notice must include:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i)–(iv).

Here, the Settlement Agreement states that the "Notice Plan provides for a robust media campaign consisting of state-of-the-art targeted internet notice, social media notice, and search engine marketing." (ECF No. 17-3 at § 6.2). The Notice Plan further "provides for the implementation of a dedicated Settlement Website and toll-free telephone line where Class Members can learn more about their rights and options pursuant to the terms of the Settlement Agreement." (*Id.*) The Settlement Website shall be established by the Claims Administrator and will include the Long Form Notice in downloadable PDF format and HTML format and shall include, *inter alia*, a table of contents, answers to frequently asked questions, a contact information page, the Consolidated Complaint, the Settlement Agreement, and a downloadable version of the Claim Form. (*Id.* at § 6.3). Class Notice will be issued no later than thirty days following the Court's entry of the Preliminary Approval Order. (*Id.*)

Further, Cameron R. Azari, Senior Vice President of Epiq, further specifies the methods of notice including, *inter alia*, internet digital notice placed on a created Settlement Website and on social media platforms like *Instagram* and *Facebook*, sponsored search listings on *Google*,

*Yahoo!* and *Bing* which will display the Settlement information once a visitor of the website searches for selected keyword combinations related to the Settlement, and through "Informational Releases" to over 13,000 media outlets including local and national newspapers, magazines, television, and media networks. (ECF No. 17-10, Azari Decl. at ¶¶ 24-27, 31, 32-33.) All forms of Notice will be targeted, displayed, and/or issued nationwide. (*Id.* at ¶¶ 30, 31, 32.)

The proposed Notice Plan also satisfies each of the notice requirements under Fed. R. Civ. P. 23 because the proposed notices in Long Form and Short Form clearly set out: (i) basic information about the actions (ECF Nos. 17-4 at pp. 2, 5-6; ECF No. 17-5 at p. 2); (ii) the class (ECF No. 17-4 at p. 2; ECF No. 17-5 at p. 2); (iii) the class claims and issues (ECF No. 17-4 at pp. 5-6); (iv) that class members may enter an appearance through separate counsel (ECF No. 17-4 at pp. 8-9; ECF No. 17-5 at p. 3); (v) that those who request exclusions will be excluded (ECF No. 17-4 at p. 9); (vi) the manner and time for requesting an exclusion (ECF No. 17-4 at pp. 9-10; ECF No. 17-5 at p. 3); and (vii) the binding effect of a class judgment on class members (ECF No. 17-4 at pp. 7, 9-11).

Accordingly, the proposed Notice and its plan of distribution is approved.

### E.  **Approval of the Class Administrator**

Finally, Plaintiffs propose that the Court appoint Epiq as Class Administrator. (ECF No. 17-1 at pp. 10-11; *see* ECF No. 17-3 at § 2.9.) The Court is satisfied with the procedures that Epiq is to take in the role it will be assigned including, *inter alia*, establishing and operating the Settlement Fund, arranging for the dissemination of Class Notice pursuant to the Notice Plan, answering inquiries from Class Members, establishing the Settlement Website, and "[o]therwise assisting with the implementation and administration of the Settlement." (ECF No. 17-3 at § 6.1).

It is beyond peradventure that Epiq is qualified to act as Class Administrator. Indeed, Epiq has been appointed Class Administrator in a variety of class actions in this Circuit. *See, e.g., Rankins v. Arca Continental S.A.B. de C.V.*, No. 20-CV-1756 (ENV) (TAM), 2024 WL 4986411, at \*3 (E.D.N.Y. Oct. 30, 2024) (recommending that "Epiq be appointed as settlement administrator and be directed to commence the notice plan"), *report and recommendation adopted*, 2024 WL 5007394 (E.D.N.Y. Dec. 6, 2024); *Zimmerman v. Paramount Global*, No. 23-CV-2409 (VSB), 22-CV-9355 (VSB), 2025 WL 763734, at \*5 (S.D.N.Y. Mar. 11, 2025) ("Here, the distribution plan here has been formulated by experienced counsel and is being overseen by Epiq Class Action and Claims Solutions, Inc. ("Epiq"), an experienced claims administrator."); *Torretto v. Donnelley Fin. Sols., Inc.*, No. 1:20-cv-02667 (GHW), 2023 WL 123201, at \*1 (S.D.N.Y. Jan. 5, 2023) (approving final class action settlement where "[t]he Court appointed Epiq Class Action and Claims Solutions, Inc. ("Epiq") to serve as the Settlement Administrator and to execute the Notice plan set forth in the Settlement Agreement"); *In re Nano-X Securities Litigation*, No. 21-CV-5517 (RPK) (PK), 2024 WL 5630554, at \*1 (E.D.N.Y. Apr. 17, 2024) ("The Court authorized Epiq Class Action & Claim Solutions, Inc. ('Epiq') to act as the claims administrator for the class settlement and issue the Notice Packet to Settlement Class members.")

Therefore, the Court appoints Epiq as Class Administrator.

## **CONCLUSION**

For the reasons stated herein, Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 17) is **GRANTED**, and the following is hereby **ORDERED**:

(i)    The Court finds on a preliminary basis that the settlement memorialized in the Agreement and filed with the Court falls within the range of reasonableness and meets the requirements for preliminary class settlement approval;

(ii)    The Court conditionally certifies, for settlement purposes only, the following Federal Rule of Civil Procedure 23 Class ("Class") described in the Agreement: All purchasers

within the United States that, between November 21, 2020 through the Preliminary Approval Date, purchased for use and not for resale or distribution purposes, one or more of Tom's of Maine's toothpaste products;

(iii)   The Court finds, on a preliminary basis for settlement purposes only, that the requirements of Federal Civil Procedure 23 are satisfied;

(iv)   The Court appoints named Plaintiffs, Jana Rabinowitz, Shana Denny, and Yolanda Pitre, as Class Representatives;

(v)   The Court appoints Denlea & Carton LLP, The Wright Law Office, and Wilshire Law Firm, for settlement purposes only, as Class Counsel;

(vi)   The Court appoints Epiq Systems, Inc. as the Class Administrator;

(vii)   The Court approves the proposed Notice Plan for distribution to Class Members;

(viii)   The deadline for Class Members to opt-out of the Settlement or to make objections to the Settlement shall be ninety (90) days after the Settlement Notice Date which shall commence no later than thirty (30) calendar days following entry of the Preliminary Approval Order;

(ix)   Class Counsel shall file a motion for final approval of the settlement as set forth in the Settlement Agreement on or before **July 27, 2026**; and

(x)   The Court will conduct an in-person Final Approval Hearing on **September 10, 2026, at 11:00 AM** in the Central Islip Courthouse, Courtroom 1020, to determine (a) whether the proposed settlement of the Action on the terms and conditions provided for in the Settlement Agreement are fair, reasonable, and adequate and should be given final approval by the Court; (b) whether a judgment and order of dismissal with prejudice should be entered; (c) whether to approve the Fee Award to Class Counsel; and (d) whether to approve the payment of service awards to the Class Representatives.

Dated:   Central Islip, New York.
         March 6, 2026

S O   O R D E R E D :

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

32