FILED
CLERK
**9/23/2026**
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
JANA RABINOWITZ, SHANA DENNY, and YOLANDA PITRE,

*Plaintiffs*,

-against-

COLGATE-PALMOLIVE COMPANY AND TOM'S OF MAINE, INC.,

*Defendants*.
---------------------------------------------------------------------X

**OPINION AND ORDER**

2:25-cv-06996 (JMW)

**A P P E A R A N C E S:**

**Jeffrey I. Carton**
Denlea & Carton LLP
2 Westchester Park Drive, Suite 410
White Plains, NY 10604

**Will Wright**
The Wright Law Office, P.A.
515 N. Flagler Drive Suite 350
West Palm Beach, FL 33401

**Thiago Coelho**
Wilshire Law Firm, PLC, Class Action
660 S. Figueroa St., Sky Lobby
Los Angeles, CA 90017
*Attorneys for Plaintiffs*

**Craig Thomas McAllister**
**Hannah Y Shay Chanoine**
**Nexus Uzoma Sea**
O'Melveny & Myers, LLP
1301 Avenue of the Americas, Suite 1700
New York, NY 10019-6022
*Attorneys for Defendants*

**WICKS,** Magistrate Judge:

Plaintiffs Jana Rabinowitz, Shana Denny, and Yolanda Pitre ("Plaintiffs") commenced this class action against Colgate-Palmolive Company and Tom's of Maine, Inc. ("Defendants") on behalf of a nationwide group of consumers who purchased certain toothpaste products originating from Defendant Tom's of Maine's Sanford, Maine facility. (*See generally* ECF No. 1.) Plaintiffs contend that Defendants' packaging and labelling of Tom's of Maine toothpaste, namely the representations that the products were "naturally sourced," "good for you," and made with "rigorous ingredient and packaging standards," misled reasonable consumers who would not have purchased those products had they known about the conditions described in a November 5, 2024 letter that the U.S. Food and Drug Administration issued to Defendants which raised concerns that certain conditions at the Sanford facility, like the water quality, were not in compliance with the FDA's manufacturing practices. (*See id.* at ¶¶ 7-9, 15-19, 21.)

Now before the Court are Plaintiffs' unopposed motion for attorneys' fees (ECF No. 25) and unopposed motion for final settlement approval (ECF. No. 27). For the reasons stated on the record at the fairness hearing and those set forth below, Plaintiffs' motions (ECF Nos. 25 & 27) are **GRANTED**,[1] and the settlement is approved.

## PROCEDURAL HISTORY

On November 5, 2024, the U.S. Food and Drug Administration ("FDA") issued a warning letter to Colgate and Tom's of Maine, raising concerns that conditions at Tom's of Maine's Sanford, Maine facility were not in compliance with the FDA's policies. (ECF No. 17-3 at ¶ 1.B-C.) Over the following months, five separate consumer class actions were filed against

[1] Familiarity with the procedural history and background of this action is assumed herein. The Court points the reader to ECF No. 21, for a full recitation of the factual and procedural histories.

Defendants, in courts throughout the country, alleging, *inter alia*, misrepresentation, fraud, negligence, and breach of implied or express warranty. (*Id.* at ¶ 1.D-H.) The parties engaged in collective mediation on May 28, 2025, and continued to negotiate thereafter. (*Id.* at ¶ 1.I.) Rather than settle five separate actions, the parties decided to consolidate the actions into one action to be filed in this District. (*Id.* at ¶ 1.M.) The parties signed the Settlement Agreement on December 18, 2025. (*Id.* at 20–29.) On December 19, 2025, pursuant to the agreed-upon plan, Plaintiffs filed this action. (ECF No. 1.) Shortly thereafter, on January 9, 2026, the parties filed their motion for preliminary settlement approval. (ECF No. 17.) The Court granted that motion and set a schedule for the Class to be notified of the settlement. (ECF No. 21.) After notice was disseminated, the parties filed the instant motions for attorneys' fees (ECF No. 25) and final settlement approval (ECF No. 27) on July 13, 2026, and July 27, 2026, respectively. The Court held a fairness hearing[2] on September 10, 2026. (*See* Electronic Order dated 9/10/2026.)

## THE PROPOSED SETTLEMENT

### *A. Settlement Amount and Other Relief*

The total settlement amount is $2,900,000.00 ("Settlement Fund"). (ECF No. 17-3 at § 3.1.) This Settlement Fund will provide payment of "all Settlement expenses, including Notice and other Administrative Costs; CAFA Notice, the Fee Award; Service Awards; and Class Member Claims." (*Id.*) "Each Class Member who submits an Approved Claim that is accompanied by Proof of Purchase of Class Products may be entitled to receive a full refund (subject to a class-wide pro rata deduction) of the amount of money he or she spent that is

---

[2] A Fairness Hearing is the final step prior to settlement approval, where the Court provides members with the opportunity to be heard and object, and ensures that the settlement is fair and reasonable. *See What's Market: Process of Settling Class Actions*, Practical Law Practice Note w-000-4398; *Settling Class Actions: Process and Procedure*, Practical Law Practice Note 3-541-8765.

documented by Proof of Purchase, capped at (3) Class Products." (*Id.* at § 5.3). "Each Class Members who submits an Approved Claim that is not accompanied by Proof of Purchase may receive the total of the average manufacturer's suggested price (subject to a class-wide pro rata deduction) for up to one (1) Class Product claimed per household." (*Id.* at § 5.2).

### ***B. <u>Notice</u>***

Epiq Systems, Inc. ("Epiq"), the Settlement Administrator, previously and preliminarily approved by the Court, has provided "a robust media campaign consisting of state-of-the-art targeted Internet notice, social media notice, and search engine marketing." (ECF No. 27 at 6.) Additionally, notice was provided through "Informational Releases" to over 13,000 media outlets and were displayed nationwide. (*Id.)* The following numbers illustrate the efforts made by Epiq to reach the class – "Approximately 70% of the Settlement Class received notice of the Settlement, and, as of July 24, 2026, Epiq had received 1,481,582 claims." (*Id.*) There have been three objections to the proposed Settlement Agreement, as well as seven requests to opt-out. (*See* ECF No. 28-1 at 53.)

### ***C. <u>Class Member Release</u>***

In accordance with the Settlement Agreement, Class Members agree to release Defendants from "any and all past, present, and future claims (except personal injury claims), demands, rights, suits, liabilities, injunctive and/or declaratory relief, and causes of action... that any Class Members has, had, or may have against the Released Defendants that arise out of the allegations in the Actions ... or otherwise depend on the same set of operative facts alleged in the Actions that have been brought, could have been brought, or are currently pending in any forum in the United States." (ECF No. 17-3 at § 8.1).

### *D. Allocation of Settlement Fund and Fees*

The Settlement Fund shall be used to pay "all Settlement expenses, including Notice and Other Administrative Costs; CAFA Notice, the Fee Award; Service Awards; and Class Members' Claims." (ECF No. 17-3 at § 3.1.) Further, Defendants shall make payments in accordance with the following schedule: (i) amounts equal to the cost of publishing the Notice Plan, CAFA Notice, and other administrative costs are to be paid within ninety (90) days of when the amounts are invoiced to Defendants; (ii) costs for claims validation or other claims processing related costs will be paid within ninety (90) days of when such amounts are invoiced to Defendants; and (iii) to cover the Fee Award and Service Awards and payment of Approved Claims shall be remitted to the Claims Administrator within ten (10) business days of the Effective Date. (*Id.* at § 3.3)

## FINAL SETTLEMENT APPROVAL

This Court previously found that Rule 23 was satisfied and certified the Class for settlement purposes. (*See* ECF No. 21.) Likewise, the conditional approval of the collective action was granted. (*Id.*) The basis for approval and certification remains the same at this stage. *See In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020) ("The Court in its opinion and orders providing the basis for its preliminary approval of the five settlements has already explained in detail why the Rule 23 and *Grinnell* factors support approval of each of the settlements. The Court re-adopts that analysis here…."). Rather, the focus now at this final stage is fairness, reasonableness, and whether the settlement is adequate. *See id.* ("Because these subsequent developments only further support the fairness, reasonableness, and adequacy of the settlements, the Court gives its final approval to all five settlements."). The standard of review at this stage is as follows:

> [T]o grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is fair, reasonable and adequate. Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement. Courts examine procedural and substantive fairness in light of the strong judicial policy favoring settlements of class action suits.

*Spagnuoli v. Louie's Seafood Rest., LLC*, No. 13-CV-4907 (JMA) (ARL), 2018 WL 7413304, at *3 (E.D.N.Y. Sept. 27, 2018) (citing Fed. R. Civ. P. 23(e)) (internal citations and quotations omitted).

Rule 23(e)(2) provides certain factors for the court to consider upon approval.

Specifically, whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment;
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Prior to the 2018 amendment, Rule 23(e)(2) the Second Circuit examined "the fairness, adequacy, and reasonableness of a class settlement according to the '*Grinnell* factors.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Now, the four Rule 23(e)(2) factors are the "procedural considerations and substantive qualities that should always matter to the decision whether to approve [a settlement] proposal." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). These factors do not displace the "traditional" *Grinnell* factors. Therefore, the

Court must review the factors outlined in Rule 23(e)(2) in conjunction with the *Grinnell* factors. *Id.*; *see Ramon Hernandez, et al., v. Between the Bread 55th Inc., et. al.*, No. 17-CV-9541 (LJL), 2021 WL 12279220, at *2 (S.D.N.Y. Aug. 16, 2021) ("Additionally, courts in the Second Circuit consider the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), to determine whether the standards of Rule 23(e)(2) have been met.") The *Grinnell* factors include:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.*

The "Rule 23(e)(2) factors [] add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Indeed, there is significant overlap between the two sets of factors. *Id.* Both sets of factors are considered below.

***A. Adequate Representation by Class***

The first factor to consider under Rule 23(e) is whether "the class representatives and class counsel have adequately represented the class[.]" Fed. R. Civ. P. 23(e)(2)(A). As set forth in this Court's Preliminary Approval Order (ECF No. 21 at 11–14), Plaintiffs and Co-Class Counsel remain adequate representation for the Class, as circumstances at this time are unchanged. Plaintiffs' interest is adequately aligned with the Class members, as Plaintiffs share the same claims, and Plaintiffs have played a large role in assisting Class Counsel with this matter since its inception. (*Id.*) Likewise, Plaintiffs' counsel are sufficiently experienced and qualified to represent the class. (*Id.*) Class Counsel has expended numerous hours on this matter and has handled hundreds of similar cases. (ECF No. 25 at 5.) This factor remains in favor of granting final approval.

Accordingly, the Court confirms the appointment of Plaintiffs as Class Representatives, as well as Denlea & Carton LLP ("D&C"), The Wright Law Office ("Wright"), and Wilshire Law Firm, PLC ("Wilshire") as Class Counsel for settlement purposes.

***B. Arms-Length Negotiations After Meaningful Discovery***

The second factor under Rule 23(e) is whether "the proposal was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(B). In evaluating this factor, courts consider, *inter alia*, "the amount of discovery exchanged and counsel's understanding of the case." *In re: Perry Johnson & Associates Medical Transcription Data Security Breach Litigation*, No. 1:24-MD-03096 (RPK) (LGD), 2026 WL 2617900, at *8 (E.D.N.Y. Sept. 3, 2026) (internal citations omitted). "This factor is coextensive with the third *Grinnell* factor (the stage of the proceedings and amount of discovery completed)." *Id.*

Here, the parties negotiated at arms-length. Indeed, extensive settlement discussions were had with the assistance of mediator, the Honorable Suzanne H. Segal (Ret.) of Signature Resolution,[3] leading to the settlement. (ECF No. 21 at 20.) Moreover, settlement resolution only occurred after meaningful formal mediation as well as further mediation statements addressing the legal issues, positions, and risks. (*Id.*) This factor weighs in favor of final approval. *See Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18-CV-885 (FB) (SMG), 2020 WL 8642081 at *6–7 (E.D.N.Y. Oct. 8, 2020).

Although the case settled before formal discovery, the parties conducted extensive informal discovery in conjunction with the negotiation process. (ECF No. 21 at 20.) Class Counsel's investigation included research concerning U.S Food & Drug Administration regulations and state-law consumer causes of action, factual research into the scope of the alleged contamination of the Class Products[4], and a successful Freedom of Information Act ("FOIA") request. (ECF No. 25-2 at ¶ 9–10.) Courts have found comparable investigations sufficient to furnish counsel with "the information necessary to negotiate a well-informed, and ultimately fair and reasonable settlement." *Hunter v. Blue Ridge Bankshares, Inc.*, No. 23-CV-8944, 2025 WL 1649323, at *19 (E.D.N.Y. June 11, 2025) (preliminarily approving settlement despite absence of formal discovery, based on plaintiff's investigation "which included interviewing former employees of defendant[] and 'scouring public records'"); *In re Perry*, 2026 WL 2617900, at *8 (same).

[3] The court recognizes and appreciates the good work and efforts of Judge Suzanne H. Segal (Ret.) in helping resolve the dispute.
[4] Capitalized terms not otherwise defined herein have the definitions ascribed to them in the Settlement Agreement (ECF No. 17-3).

### *C. Adequate Relief for the Class*

The third factor is whether "the relief provided for the class is adequate[.]" Fed. R. Civ. P.. 23(e)(2)(C). The Rule delineates certain sub-factors that courts must take into account when evaluating the adequacy of relief: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class ...; (iii) the terms of any proposed award of attorney's fees ...; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* As set forth in this Court's Preliminary Approval Order (ECF No. 21 at 20), the above factors to be considered are evaluated in tandem with the applicable *Grinnell* factors.

#### ***a. Costs, Risks, and Delay of Trial and Appeal***

This Rule 23(e)(2) factor "subsumes several *Grinnell* factors," including the complexity, expense and likely duration of litigation (*Grinnell* Factor 1), risks of establishing liability (*Grinnell* Factor 4), the risks of establishing damages (*Grinnell* Factor 5), and the risks of maintaining the class through trial (*Grinnell* Factor 6). *See Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG)(RER), 2021 WL 1259559, at *5 (E.D.N.Y. 2021) (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36.) "Class action suits have a well-deserved reputation as being most complex." *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG)(PK), 2021 WL 508339, at *5 (E.D.N.Y. 2021). This case is no exception.

Prolonging litigation would create additional cost and delay. If this case were to proceed, the parties would engage in extensive motion practice to dismiss and for class certification, extensive class-wide discovery to establish liability and damages, a trial, and a potential appeal of judgment reached. (*See* ECF No. 17-1 at 15–16.) Victory would be far from guaranteed. As Plaintiffs note, a court in the Southern District recently decertified a class and granted summary judgment against plaintiffs who brought similar labeling claims against Defendants' products as

Plaintiffs do here. (*Id.* (citing *De Lacour v. Colgate-Palmolive Co.*, No. 16-CV-8364 (KMW), 2024 WL 36820 (S.D.N.Y. Jan 3, 2024)). Accordingly, the costs, risks, and delay of trial weigh in favor of final settlement approval. *See Rosenfeld*, 2021 WL 508339 at *5; *Carbone v. Ltd. Run Games, Inc.,* No. 2:24-CV-08861 (NJC) (JMW), 2025 WL 3254618, at *10 (E.D.N.Y. Nov. 21, 2025).

***b. Effectiveness of the Proposed Method of Distributing Relief to the Class***

An adequate distribution method is one that can "deter or defeat unjustified claims" without imposing an undue demand on class members. *Rosenfeld*, 2021 WL 508339 at *5 (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). The method "need not be perfect," but rather merely needs to have a reasonable, rational basis, especially when recommended by experienced counsel. *Id.* (quoting *In re EVCI Career Colleges Holding Corp. Sec. Litig.,* No. 05-cv-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007)); *see also In re WorldCom, Inc. Sec. Litig.,* 288 F. Supp. 2d 319, 244 (S.D.N.Y. 2005).

Here, the parties retained Epiq—"an industry leader in class action administration, having implemented more than a thousand successful class action notice and settlement administration matters"—as Class Administrator, and Epiq sent notice via numerous electronic means in accordance with the Notice Plan in the Settlement Agreement. (ECF No. 17-10, Azari Decl. at ¶ 4; ECF No. 17-3 at § 6.2). As the Court observed at the preliminary approval phase, the Notice Plan provides proper measures of correcting any issues that may occur, advises Class Members of their rights, and answers any questions that the Class Members may have. (ECF No. 17-3 at §§ 6.2, 6.3.) Epiq is responsible for receiving and processing Class Member claims and distributing Cash Awards to Class Members with Approved Claims. (*Id.* at § 6.1(i)). Epiq will then distribute Approved Claims within thirty days of the Effective Date and any payment

distributed that is not cleared within 180 days after issuance will become null and void. (*Id.* at §§ 5.7, 5.8). *See, e.g.*, *Carbone*, WL 3254618, at *13–14 (preliminarily approving settlement based on similar notice distribution plan).

Notice was distributed via a multiplicity of media, including social media platforms such as Facebook and Instagram; sponsored search listings (based on a thorough list of keyword combinations) on Google, Yahoo!, and Bing; and traditional ads on websites such as *Los Angeles Times* and *WebMD*. (ECF No. 28-1 ¶¶ 12–19; *id.* at 25–26, 30.) Epiq estimates that approximately 70% of potential class members received notice of the Settlement.[5] (*Id.* at ¶ 31.) This is more than enough to establish that the method of distributing relief is effective. *See, e.g.*, *Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142 (PKC) (RML), 2023 WL 12311803, at *13 n.12 (E.D.N.Y. June 12, 2023) (finding comparable notice sufficient and granting final settlement approval despite objector's objection that he struggled with the website).

The efficacy of the Notice Plan is further demonstrated by the number of claims that Epiq received. As of July 27, 2026, Epiq had received 1,481,582 Claim Forms. (ECF No. 28-1 at ¶ 28.) At the fairness hearing, Plaintiff's counsel explained that, in the six weeks since July 27, Epiq has concluded that many of those claims were fraudulent. Bots and bad actors use a variety of sophisticated means to submit claims to which they are not entitled, including by creating fake email addresses or usernames to submit multiple claims per household or claims for people who do not exist. Even after weeding out these fraudulent claims, however, Epiq believes as of September 10, 2026 that there are 281,000 valid claims. This is still a remarkable number, which is testament to the effectiveness of the Notice Plan. Courts have recognized that participation

[5] At the fairness hearing, Plaintiffs' counsel elaborated on how Epiq came to this "70%" figure. Epiq knows that its advertisements generated about 300 million impressions. Epiq then considers the typical users of platforms such as Facebook and the typical purchasers of Tom's of Maine toothpaste. The "Venn diagram" of these two demographics is the universe of Class Members who received notice.

rates in claims-made class action settlements are typically low, with rates between 10% and 15% considered common and a 20% participation rate viewed as well above average. *See Hernandez*, 306 F.R.D. at 100 (citing McLaughlin on Class Actions § 6:24 (8th ed.)); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (observing that class action claims rates rarely exceed 7% even where extensive notice efforts are undertaken); *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005) (recognizing that claims-made settlements regularly produce response rates of 10% or less).

***c. Terms of Any Proposed Attorneys' Fees***

The reason courts must consider attorneys' fees in assessing adequacy of relief is to "provide[] a backstop that prevents unscrupulous counsel from quickly settling a class's claims to cut a check." *Moses*, 79 F.4th at 244 (internal citation omitted). In so doing, courts are to "compare the proportion of the total recovery going to attorney's fees with the proportion going to the class, and [] consider whether that comparison reveals a sufficient imbalance as to cast doubt on the settlement's fairness." *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 119 (2d Cir. 2025).

Here, Class Counsel seeks an award of 33%—$957,000.00[6]—representing approximately a third of the Settlement Amount. (*See* ECF No. 25.) "[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card* 991 F. Supp.

---

[6] Plaintiff's counsel confirmed at the fairness hearing that the $957,000 Plaintiffs request will cover attorneys' fees for Class Counsel D&C, Wright, and Wilshire; costs and expenses that counsel expended (including, for example, fees to the mediator, Judge Segal); and the $20,000 fee for each of the three auxiliary law firms, Reese LLP, Dogra Law Group, and Manfred APC. (*See* ECF No. 25-2 at 6 n.6.) In other words, the $60,000 requested for those other three firms is coming out of Class Counsels' pockets, not Class Members' pockets. The $1,000 service award requested for each of the five Class Representatives and Special Plaintiffs, however, is a separate disbursement not included in the $957,000. (*See* ECF No. 25-3 at 3 (requesting $957,000 for fees and expenses to be paid from the Settlement Fund *and* $1,000 for each of the five Class Representatives and Special Plaintiffs).)

2d at 445. "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness." *Rosenfeld*, 2021 WL 508339 at *6 (citation modified) (collecting cases); *see, e.g.*, *Lozada v. TaskUs, Inc.*, No. 22 CIV. 1479 (JPC) (GS), 2025 WL 3125848, at *7 (S.D.N.Y. Nov. 6, 2025) (finding fees of $5.25 million, out of a total settlement of $17.5 million, "reasonable in relation to the benefits to be realized by the [c]lass" for purposes of evaluating adequacy of relief under Rule 23(e)(2)(C)), *report and recommendation adopted*, No. 22 CIV. 1479 (JPC) (GS), 2025 WL 3482752 (S.D.N.Y. Dec. 4, 2025). Therefore, this factor does not weigh against approval.

Importantly, the analysis at this stage only looks at attorneys' fees *relative* to the Settlement Amount, in order to determine whether relief to the Class is adequate. The analysis here, under Rule 23(e), "cannot suffice" for the "distinct" question of whether attorneys' fees are reasonable under Rule 23(h). *Kurtz*, 142 F.4th at 121. As the Second Circuit explained last year,

> Whereas Rule 23(h) asks whether fees are reasonably calculated and genuinely earned—using class recovery as a measuring stick for *attorney success*—Rule 23(e) safeguards the fairness of a settlement for the class by posing a comparative inquiry: does the proportion of the total recovery allocated to attorney's fees compared to the proportion of the total recovery allocated to the class raise any questions about the *adequacy of class relief*?

*Id.* (emphases in original). The Court will assess reasonableness of attorneys' fees below in a separate section. For now, the Court concludes only that the requested fee does not cast any doubts on the adequacy of class relief.

#### ***d. Any Agreement Required to be Identified under Rule 23(e)(3)***

This factor requires the Court to consider any agreements made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(3). Here, the parties seek a $20,000 payment to Reese LLP, Dogra Law Group, and Manfred APC, in recognition of those firms' contribution.

(ECF No. 27 at 21.) As noted above, this action is a consolidation of five separate actions.[7] The three Class Representatives here—Shana Denny, Jana Rabinowitz, and Yolanda Pitre—were each a named plaintiff in one of those initial actions, represented by Class Counsel Wright, Wilshire, and D&C, respectively. (*Cf.* ECF No. 17-3 at ¶ 1.D-H.) The two so-called Special Plaintiffs, William Foreman and Amanda Zetterstrom, were also named plaintiffs in the initial actions, represented by Manfred APC and Reese LLP, respectively. The identity and relevance of the Dogra Law Group is not entirely clear. Regardless, the Court concludes that these payments do not render the Class's relief inadequate, because the $60,000 will come out of Class Counsel's share of the Fund and not the Class's share.[8] It is well established that under the common fund doctrine, attorneys whose efforts result in the creation of a fund benefiting a group of plaintiffs may recover reasonable attorneys' fees from that fund. *See Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82 (2d. Cir. 2010).

***e. Additional Grinnell Factors Concerning Adequacy***

*i. <u>Ability of Defendants to Withstand Greater Judgment</u>*

This is *Grinnell* Factor 7, which "does not fit neatly within any of the factors enumerated in Rule 23(e)(2)(C) but adds value to the Court's analysis." *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20 CV 456 (RPK)(LB), 2021 WL 7906584 at *5 (E.D.N.Y. May 25, 2021). The principle underlying this factor is that if a defendant could not withstand a judgment greater than the amount provided for in the settlement, the settlement is more likely to be reasonable, fair, and adequate. *Flores v. CGI Inc.*, No. 22-CV-350 (KHP), 2022 WL 13804077, at *8 (S.D.N.Y. Oct.

---

[7] *Denny v. Colgate Palmolive Co. and Tom's of Maine, Inc.*, No. 24-cv-02129 (M.D. Fla.); *Rabinowitz v. Colgate-Palmolive Co., and Tom's of Maine, Inc.*, No. 622019/2024 (N.Y. Sup. Ct.); *Pitre v. Colgate-Palmolive Co., and Tom's of Maine, Inc.*, No. 4:24-cv-09318 (N.D. Cal.); *Foreman v. Colgate-Palmolive Co., and Tom's of Maine*, No. 25-cv-00314-TWR-KSC (S.D. Cal.); *Zetterstrom v. Colgate-Palmolive Co., and Tom's of Maine, Inc.*, No. 25-cv-02151 (S.D.N.Y.).
[8] *See supra*, note 6.

21, 2022). As courts have noted, however, "a defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Carbone*, 2025 WL 3481450, at *12 (quoting *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F.Supp.2d 179, 201 (S.D.N.Y. 2012)). Accordingly, this factor is neutral.

*ii.* *Reaction of the Class*

"'It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.'" *Schutter v. Tarena Int'l, Inc.*, No 21-CV-3502 (PKC), 2024 WL 4118465 at *10 (E.D.N.Y. Sept. 9, 2024) (quoting *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002)). In evaluating *Grinnell* Factor 2, "[c]ourts have found this factor to weigh in favor of approval where the majority of class members have not objected to or opted out of a settlement." *In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT), 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014). "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005).

Here, Epiq estimates that approximately 70% of potential class members received notice of the Settlement. (ECF No. 28-1 at ¶ 31.) As of September 10, 2026, three Class Members had objected and seven opted out—while ***281,000*** submitted valid Claim Forms, per counsel's representation at the fairness hearing. This overwhelmingly positive reaction strongly supports final approval. *See, e.g.*, *Wal-Mart*, 396 F.3d at 118 (eighteen objections out of five million class members indicates reasonableness); *Wright v. Stern*, 553 F. Supp. 2d 337, 344 (S.D.N.Y. 2008) (approving settlement where "[o]f some 3,500 class members, only thirteen filed objections and only three opted out"); *cf. Tuteur v.*

*Metro. Opera Ass'n, Inc.*, No. 23 CIV. 3997 (GS), 2025 WL 950995, at *8 (S.D.N.Y. Mar. 27, 2025) (finding two opt-outs and two objections compared to 555 claims indicates reasonableness in a related context, namely, attorneys' fees).

The Court has carefully considered the objections and finds them to be without merit, except one. The first objector argues that claimants with proof of purchase ought to receive "significantly higher" disbursements than claimants without proof of purchase. (ECF No. 23.) However, courts have approved comparable arrangements. *See Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142 (PKC) (RML), 2024 WL 7127457, at *13 (E.D.N.Y. Dec. 3, 2024) (approving settlement where recovery with proof of purchase was capped at $55.90, yet even without proof of purchase claimants would receive $7.50); *Hesse v. Godiva Chocolatier, Inc.*, No. 1:19-CV-0972-LAP, 2022 WL 22895466, at *10 (S.D.N.Y. Apr. 20, 2022) (approving settlement where claimants "receive compensation of $1.25 per product, up to an aggregate amount of $15 without Proof of Purchase and $25 with Proof of Purchase"); *Hart v. BHH, LLC*, No. 15CV4804, 2020 WL 5645984, at *4 (S.D.N.Y. Sept. 22, 2020) (approving settlement where "class members' recovery is capped at two units if they do not provide a receipt and six units if they do"). Accordingly, this objection is overruled.

The second objection is a single sentence: "This settlement is unfair to me as an individual claimant when excessive payment is given to the Attorneys." (ECF No. 24.) The conclusory nature of this objection alone is grounds to overrule it. *Rossi v. Proctor & Gamble Co.*, No. CIV.A. 11-7238 JLL, 2013 WL 5523098, at *7 (D.N.J. Oct. 3, 2013) (overruling objection and noting that "[w]ithout providing reasons in support of his conclusory statement, this Court is not in a position to assess—in any meaningful way—

the merits of his argument”). Moreover, even if the attorneys’ fees in this case were excessive under Rule 23(h), that does not make the settlement unfair to *claimants*. Rather, for purposes of evaluating the adequacy of relief to the Class under Rule 23(e)(2)(C), attorneys’ fees of one-third are reasonable, as established above. This objection is overruled as well.

The third objector, Samuel Goldstone, raises several issues.[9] First, he argues that the Settlement’s “rigid[]” limits on recovery—claimants with proof of purchase are capped at the value of three tubes of toothpaste no matter how many they bought, and claimants without proof of purchase are capped at one—make it “a mathematical impossibility” for the Settlement Fund to be distributed in full. (ECF No. 26.) Exhausting the Settlement Amount, he estimates, would require an “unprecedented” turnout of 189,000 claims. (*Id.*) As it turns out, however, Epiq has received ***281,000*** claims. (ECF No. 28-1 at § 28.) Accordingly, this concern is unfounded.

Next, Mr. Goldstone objects that the settlement was reached after a “single day” of mediation on May 28, 2025. (ECF No. 26.) That is not correct. The Settlement was reached after that day’s mediation *plus* “further arms-length negotiations[, ]with Judge Segal’s continued involvement and assistance by telephone and email[.]” (ECF No. 17-2 at § 6.) At the fairness hearing, counsel represented that the mediator, Judge Segal, was involved for six months until the parties finally reached the agreement memorialized in the December 2025 Settlement Agreement.

[9] The parties contend that Mr. Goldstone’s objection was untimely. The deadline for objections was 120 days after entry of the Preliminary Approval Order (*see* ECF No. 21), or July 6, 2026. The Court did not receive Mr. Goldstone’s objection until July 24, 2026. (ECF No. 26.) However, the objection was postmarked June 19, 2026. (ECF No. 26-2.) The Court therefore considers it.

Finally, Mr. Goldstone argues that the firm chosen to receive leftover Settlement funds, Equal Justice Works, has no "nexus" to the harms alleged in this case, as it "operates no programs dedicated to consumer food and drug safety, independent manufacturing line testing, or retail trade compliance." (ECF No. 26.) On this point, Mr. Goldstone is correct. Under the doctrine of *cy pres* (meaning "next best" or "as near as possible"), it "may be appropriate" to distribute unclaimed class action settlement funds "for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *In re Holocaust Victim Assets Litig.*, 424 F.3d 158, 161 n.3 (2d Cir. 2005) (quoting *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682–83 (8th Cir. 2002)). The Second Circuit has approved the use of *cy pres* to distribute unclaimed funds, at least where class members will benefit as well. *Hyland v. Navient Corp.*, 48 F.4th 110, 122 (2d Cir. 2022). Conversely, if class members will not benefit in any way, courts have expressed "concern" with the proposed designee. *See Reyes v. Summit Health Mgmt., LLC*, No. 22-CV-9916 (VSB), 2024 WL 472841, at *5 (S.D.N.Y. Feb. 6, 2024) (expressing concern where proposed recipient, "Summit Health Cares," had a similar name to the defendant, and requiring the parties to submit further briefing on the connection).

In *Hesse v. Godiva Chocolatier, Inc.*, the court rejected the parties' choice of *cy pres* recipient in a consumer fraud and false advertising case, because, *inter alia*, "its areas of activity are too remote from the harms alleged in this case, and . . . there is no assurance that the funds will go exclusively to false advertising causes." No. 1:19-CV-0972-LAP, 2022 WL 22895466, at *8 (S.D.N.Y. Apr. 20, 2022). Instead, the Court chose

the National Consumer Law Center, which would use the funds to "advance consumer rights and the amelioration of false advertising." *Id.*

Here, the Settlement Agreement provides that "funds that remain unclaimed or remain unused after the initial distribution will be donated *cy pres* to Equal Justice Works, or, if not approved by the Court, to one or more other Court-approved, non-sectarian, not-for-profit firms whose work is sufficiently tethered to the allegations in the Actions." (ECF No. 17-3 at § 5.8.) Equal Justice Works' website indicates that it arranges and sponsors legal fellowships across an array of public-interest areas, including crime victims advocacy, disaster resilience, housing justice, opioid crisis response, financial empowerment, and a catchall "Design-Your-Own Fellowship."[10] Equal Justice Works also hosts an annual career fair, which it represents to be "the largest public interest legal career fair in the country—bringing together thousands of law students, recent graduates, public interest employers, law school faculty and staff, and public interest practitioners from across the United States and its territories."[11] At the fairness hearing, counsel for both sides represented that the Settlement Agreement, as written, does not specify the use to which Equal Justice Works would need to put the *cy pres* funds; rather, the funds would go to the organization's general account to use as it saw fit.

Following the logic of *Hesse*, the Court concludes that this designation is not sufficiently tethered to the issues in this case. Rather than choose a different *cy pres* designee, however, the Court elects to simply modify the Settlement Agreement as follows: Leftover funds, if any, shall be donated *cy pres* to Equal Justice Works **to fund**

---

[10] EQUAL JUSTICE WORKS, https://www.equaljusticeworks.org/ [https://perma.cc/YH5B-X7KJ](last visited September 12, 2026).
[11] *Id.*

**fellowships designed to protect consumers in the areas of food and drug safety, independent manufacturing line testing, or retail trade compliance**. *See Wilkins v. HSBC Bank Nev., N.A.*, No. 14 C 190, 2015 U.S. Dist. LEXIS 23869, at *12 (N.D. Ill. Feb. 27, 2015) (approving settlement of Telephone Consumer Protection Act class action providing that unused funds would be distributed *cy pres* to Equal Justice Works "to fund fellowships designed to protect consumers against unfair debt collection practices").

With that adjustment made and considering that the rest of the objections are without merit and that no objectors appeared at the fairness hearing, the Court concludes that the reaction of the Class favors final approval of the Settlement.

*iii. Reasonableness of the Settlement in Light of the Best Possible Recovery*

*Grinnell* Factors 8 and 9 require the Court to consider the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. These two factors are often combined for the purposes of analysis. *In re Payment Card*, 330 F.R.D. at 47–48.

Determining whether a settlement amount is reasonable does not necessarily involve "a mathematical equation yielding a particularized sum." *Henry v. Little Mint, Inc.*, No. 12-CV-3996 (CM), 2014 WL 2199427, at *10 (S.D.N.Y. 2014). Rather, it considers a range of reasonableness which recognizes the uncertainties of law and fact and the accompanying costs of litigation. *Id.* For instance, a settlement which allows Class Members to be immediately paid is reasonable even if it means sacrificing a hypothetically larger amount if the matter were to proceed. *Id.*

The Settlement Fund is $2,900,000.00. The Class will receive their settlement payments shortly after the final approval. "[S]ettlements have been approved as reasonable where the settlement provides a 'meaningful benefit' to the class." *In re 3D Sys. Sec. Litig.*, No. 21-CV-1920 (NGG)(TAM), 2024 WL 50909, at *12 (E.D.N.Y. Jan. 4, 2024) (internal citations omitted). Moreover, "[t]his method is undoubtedly sooner than if each Class Member waited to receive payment after trial, assuming they were successful." *Abarza v. Spirit Pharms. LLC*, No. 23-CV-03637 (JMW), 2025 WL 1519147, at *13 (E.D.N.Y. May 28, 2025).

Concerningly, however, the parties do not explain what "the best possible recovery" would be. *Grinnell*, 495 F.2d at 463. As Plaintiffs' own cases indicate, this is normally a comparative inquiry. (*See* ECF No. 17-1 at 11 (quoting *Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where the "best possible recovery would be approximately $121 million")). For example, in *Schutter*, the court found that a $3.5 million settlement was reasonable in light of maximum recoverable damages of $18.4 million, since the recovery represented 19% of the estimated best possible recovery. 2024 WL 4118465, at *12. Here, Plaintiffs do not state what their estimated total damages are—not in their brief for preliminary approval (ECF No. 17-1 at 11), not in their brief for final approval (ECF No. 27 at 17), and not in the declarations accompanying those motions (ECF Nos. 17-2, 28). They simply assert that the Settlement is an "excellent" result. (ECF Nos. 25-1 at 2; 27 at 11; 28 at ¶ 24.) That characterization is meaningless without a denominator—$2.9 million compared to what?

At the fairness hearing, the Court pressed counsel on this point multiple times. Counsel deflected each time, refusing to give even a ballpark estimate of the Class's total recoverable damages.

Nevertheless, on balance the Court concludes that this alone does not render the Settlement unfair. "No single *Grinnell* factor is dispositive." *Charles v. Opinion Access Corp.*, No. 16CV6868KAMJO, 2020 WL 9812930, at *6 (E.D.N.Y. Mar. 13, 2020); *see also Moses*, 79 F.4th at 243 (explaining that the factors outlined in Rule 23(e)(2) must be analyzed "holistically," with the *Grinnell* factors "remain[ing] a useful framework" to supplement that analysis). Two factors in particular stand out: (1) Epiq's exemplary notice procedures, spanning both conventional and social media and yielding an estimated 300 million[12] impressions; and (2) the fact that hundreds of thousands of valid claims were submitted, compared to only three objections and seven opt-outs. Given how many people were made aware of the Settlement and affirmatively showed interest, it stands to reason that if the Settlement were unacceptably low, more people would have lodged objections or opted out. The Court therefore concludes that, in this particular case, the overwhelmingly positive reaction of the class outweighs the questionable range of reasonableness. *See Charles*, 2020 WL 9812930, at *5–6 (finding the "range of reasonableness" factor "counsel[ed] against approval of the settlement" but nevertheless finding settlement fair overall in light of the rest of the factors); *see also Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

### ***D. Equitable Treatment of Class Members***

The fourth and final consideration under Rule 23(e) is whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). As accepted in the preliminary review, and pursuant to the Settlement Agreement, the parties have agreed that the Class Representatives and Special Plaintiffs may receive, subject to Court approval, incentive or

---

[12] *See supra* note 5 and surrounding text.

service awards of up to $1,000. (ECF No. 25. at 13.) With three Class Representatives Jana Rabinowitz, Shana Denny, and Yolanda Pitre, and two Special Plaintiffs William Foreman and Amanda Zetterstrom, the total amount of $5,000 taken from the Settlement Fund is more than reasonable. Service payments have routinely been awarded to named plaintiffs. *See, e.g.*, *Campbell v. Bukhari Grp. LLC*, No. 22-CV-2813 (PK), 2025 WL 1874485, at *13 (E.D.N.Y. July 8, 2025) (preliminary approving service award) ("Courts routinely grant requests for service awards in federal class actions"); *Buchanan*, 2020 WL 8642081, at *8 ("'incentive' or 'service'" award[s] [are] not uncommon in class action cases and [are] 'meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit'") *Cohan*, 2018 WL 4861391, at *6 ("Service awards are common in class action cases").

Further, as it relates to the Settlement Agreement's release provisions, "[a] settlement cannot be fair, reasonable and adequate if the Class-wide release is overbroad." *Oladapo v. Smart One Energy, LLC*, No. 14-CV-7117 (LTS) (BCM), 2017 WL 5956907, at *14 (S.D.N.Y. 2017), *report and recommendation adopted*, No. 14-CV-7117 (LTS)(BCM), 2017 WL 5956770 (S.D.N.Y. 2017). The Settlement Agreement provides that each Class Member agrees to release

> any and all past, present, and future claims (except personal injury claims), demands rights, suits, liabilities, injunctive and/or declaratory relief, and causes of actions . . . that any Class Members has, had, or may have against the Released Defendants that arise out of the allegations in this Actions . . . or otherwise depend on the same set of operative facts alleged in the Actions that have been brought, could have been brought, or are currently pending forum in the United States.

(ECF No. 17-3 at § 8.1.) This release language is targeted at conduct pertaining to this Class Action lawsuit, and as such, is limited to those claims. Therefore, it is not overbroad.

Accordingly, the Court finds this factor weighs in favor of approval. Considering the foregoing, the Court grants final settlement approval.

**ATTORNEYS' FEES AND COSTS**

In class actions, the court may award reasonable attorney's fees and costs "that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Under Rule 23(h), district courts have discretion to choose between the 'lodestar' and the 'percentage of the fund method' for assessing the reasonableness of attorney's fees, although the trend in the Second Circuit is towards the latter method." *Caccavale v. Hewlett-Packard Co.*, No. 20-CV-974 (NJC) (ST), 2025 WL 2960237, at *11 (E.D.N.Y. Oct. 20, 2025) (citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)). "Under a lodestar analysis, courts 'calculate[ ] a given attorney['s] fee by multiplying an attorney's reasonable hourly rate by the number of hours that the attorney spent on the case."' *Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 67 n.2 (2d Cir. 2019). The Second Circuit encourages district courts to do a lodestar cross-check if the percentage method is used. *See C.K. through P.K. v. McDonald*, No. 22-CV-1791 (NJC) (JMW), 2026 WL 220984, at *25 (E.D.N.Y. Jan. 15, 2026). Irrespective of which method is chosen, the Court must analyze the proposed award of fees with the following well-known *Goldberger* factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Hasemann v. Gerber Prods. Co.*, No. 15-CV-2995(EK)(JAM), 2025 WL 2773748, at *6 (E.D.N.Y. Sept. 29, 2025) (same). These *Goldberger* factors are used when there is a common fund for the benefit of the Class.[13] *See In re Nassau Cnty. Strip Search Cases*, 12 F. Supp. 3d 485, 492 (E.D.N.Y. 2014) (quoting *Goldberger,* 209 F.3d at 47) ("It bears emphasis [however,] that whether calculated

[13] The Settlement Fund here is a "common" fund. (ECF No. 28 at ¶¶ 8, 24.)

pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances."); *see also Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 72 (2d Cir. 2019) ("[W]here a class action results in a common-fund settlement for the benefit of the class, the common-fund doctrine applies and permits a district court to use its discretion to award class counsel either an unenhanced lodestar fee or a fee calculated as a percentage of the settlement fund."). It is within these legal principles that the instant fee application is analyzed.

The Parties have reached a settlement with a Settlement Fund of $2,900,000.00 (ECF No. 21 at 5.) Plaintiffs' attorneys seek a fee award of 33% of the Settlement Fund, or $957,000.00, which includes costs.[14] (ECF No. 28 at ¶ 27.)

The Court begins with the lodestar analysis. Plaintiffs state that their lodestar plus expenses come to $968,581.32—which is conveniently almost exactly 33% of the Fund. (ECF No. 25-2 at ¶ 24.) Plaintiffs were represented by three firms: Denlea & Carton ("D&C"), The Wright Law Office ("Wright"), and Wilshire Law Firm ("Wilshire"). (*Id.* ¶ 25.) These firms' stated hourly rates are $800-$1,200, $325-$975, and $725-$1,000, respectively. (*Id.*) At the fairness hearing, the Court instructed counsel to submit contemporaneous billing records *in limine*. Upon review of the records, counsel seek the following as set forth in the chart below:

[14] *See supra* note 6.

| Firm | Attorney Name | Position | Proposed Hourly Rate | Number of Hours | Total |
|---|---|---|---|---|---|
| D&C | J. Carton | | $1,200 | 156.45 | $187,740 |
| | C. Friesen | | $1,000 | 89.35 | $89,350 |
| | J.P. Kane | | $800 | 10.5 | $8,400 |
| | L. Smith | | $1,000 | 28.2 | $28,200 |
| **D&C Total** | | | | | **$313,690** |
| Wright | W. Wright | Partner | $975 | 192 | $187,200 |
| | N. Wright | Partner | $775 | 136.5 | $105,788 |
| | K. Mata | Associate | $425 | 68.5 | $29,113 |
| | A. LeMaster | Associate | $325 | 7 | $2,275 |
| **Wright Total** | | | | | **$324,375** |
| Wilshire | T. Coelho | | $1,000 | 163.5 | $163,500 |
| | J. Leinbach | | $900 | 75 | $67,500 |
| | R. Aguirre | | $800 | 70.2 | $56,160 |
| | J. Chen | | $725 | 31.5 | $22,838 |
| **Wilshire Total** | | | | | **$309,998** |
| **Grand Total** | | | | | **$948,063** |

The requested hourly rates are too high. "A reasonable hourly rate is the rate a paying client would be willing to pay, bearing in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." *Kurtz v. Kimberly-Clark Corp.*, No. 14-

CV-1142 (PKC) (RML), 2024 WL 184375, at *12 (E.D.N.Y. Jan. 17, 2024) (citation modified) (internal citation omitted), *vacated and remanded on other grounds*, 142 F.4th 112 (2d Cir. 2025). "In assessing the hourly rate, courts consider rates awarded in the district in which the reviewing court sits, pursuant to what is known as the 'forum rule.'" *Id.* (internal citation omitted).

Where requested rates exceed forum limits, "the Court is well within its authority to reduce the billable rates under the lodestar method." *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 87 (E.D.N.Y. 2002) (reducing excessive hourly rates under lodestar cross check, and granting fees of 12% of settlement instead of requested 25%); *see also, e.g.*, *McLaughlin v. IDT Energy*, No. 14CV4107ENVRML, 2018 WL 3642627, at *16 (E.D.N.Y. July 30, 2018) (class-action plaintiffs sought fees based on both percentage of the settlement and lodestar, seeking rates as high as $950 for partners; court found reasonable rate for partners to be $450 to $550 and adjusted lodestar accordingly); *Strip Search*, 12 F. Supp. 3d at 497–98 (class-action plaintiffs requested "$400 to $790 for partners" and "$285 [to] $475 for associates"; court granted $450 for partners and $300 for associates).

In 2025, rates in the Eastern District were typically around "$450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals." *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 244 (E.D.N.Y. 2025). To be sure, those are only averages, and courts have noted that in "complex commercial litigation . . . attorneys bill at much higher rates" than the average. *C.K. through P.K. v. McDonald*, 816 F. Supp. 3d 284, 327–28 (E.D.N.Y. 2026); *see also Hasemann v. Gerber Prods. Co.*, No. 15-CV-2995(EK)(JAM), 2025 WL 2773748, at *8 (E.D.N.Y. Sept. 29, 2025) (observing that $630 per hour is "somewhat low" for a class action involving complex scientific evidence). Even still, the

rates requested by Class Counsel are nearly double what *Rubin* found representative of current forum rates.

While the Court is authorized to reduce each individual attorney's rate line by line based on seniority, there is another wrinkle here: only one of the three firms states the seniority of the attorneys. Wright's *in limine* submission identifies the position of each of the four attorneys who worked on the case—two are Partners and two are Associates—and also includes a brief "bio" of each one describing their relevant experience. Specifically, Wright represents that William Wright has more than 25 years of experience litigating class actions; Nisha Wright has more than two decades handling complex disputes in state and federal courts; Kelly Mata has seven years of litigation experience; and Arianne LeMaster is a third year associate. This gives the Court enough information to reduce Wright's rates with some degree of precision. In so doing, the Court takes as a starting point *Rubin*'s general ranges, with a modest increase due to the unique complexity of class actions:

| Firm | Attorney Name | Position | Number of Years of Experience | Requested Rate | Reasonable Rate |
|---|---|---|---|---|---|
| Wright | W. Wright | Partner | 25+ | $975 | $700 |
| | N. Wright | Partner | 20+ | $775 | $600 |
| | K. Mata | Associate | 7 | $425 | $375 |
| | A. LeMaster | Associate | 3 | $325 | $275 |

The other two firms, however, did not provide the Court with details on each attorney's seniority. Judging from their requested rates, it appears that each one is charging as a partner. Such "partner-heavy billing" constitutes an independent reason to reduce the fee, because it demonstrates an inefficient allocation of human resources. *Kurtz*, 2024 WL 184375, at *16. Accordingly, the Court exercises its discretion to impose an across-the-board reduction to these two firms. *See, e.g.*, *id.* (imposing across-the-board reduction of 20% to counsel's fee application); *Hasemann*, 2025 WL 2773748, at *9 (reducing hourly rates of four firms by 45%, 20%, 40%, and 55%, respectively). As between the two, D&C's rate, which is higher than Wilshire's, must be reduced by an even higher percentage in order to bring it in line with forum norms. The appropriate hourly rates are as follows:

| **Firm** | **Attorney Name** | **Proposed Hourly Rate** | **Reduction** | **Reasonable Rate** |
|---|---|---|---|---|
| D&C | J. Carton | $1,200 | 0.5 | $600 |
| | C. Friesen | $1,000 | 0.5 | $500 |
| | J.P. Kane | $800 | 0.5 | $400 |
| | L. Smith | $1,000 | 0.5 | $500 |
| Wilshire | T. Coelho | $1,000 | 0.35 | $650 |
| | J. Leinbach | $900 | 0.35 | $585 |
| | R. Aguirre | $800 | 0.35 | $520 |
| | J. Chen | $725 | 0.35 | $471 |

Having determined appropriate hourly rates, the Court now turns to number of hours. In their application for attorneys' fees, counsel represented that they worked 1,029 hours, but they did not substantiate that figure with invoices or timesheets. (ECF No. 25-2 at ¶ 25.) "The Second Circuit has ruled that applications for attorneys' fees *must* be supported by contemporaneous billing records." *Roberts v. Genting New York LLC*, 821 F. Supp. 3d 340, 353 (E.D.N.Y. 2026) (emphasis in original) (citing *Fisher v. SD Protection, Inc.*, 948 F.3d 593, 600 (2d Cir. 2020)) (chastising counsel for failing to submit contemporaneous records when seeking final approval). Plaintiffs are routinely ordered to submit contemporaneous billing records when seeking attorneys' fees in connection with settlement approval. *See Caccavale*, 2025 WL 2960237, at *3 (ordering plaintiffs to supplemental final approval briefing by providing contemporaneous billing records); *Kurtz*, 2024 WL 7127457, at *3 (same); *Hasemann*, 2025 WL 2773748, at *7 (same). After the fairness hearing, counsel submitted their billing records *in limine*, which the Court has reviewed.

"Courts expect counsel to exclude hours that are 'excessive, redundant, or otherwise unnecessary' or that result from a case being 'overstaffed.'" *Caccavale*, 2025 WL 2960237, at *13 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). At first blush, it may seem difficult to comprehend how counsel could have expended 1,029 hours on this matter. As explained above, this action is the result of the FDA's November 5, 2024 letter alleging certain problems at a Tom's of Maine facility. (*See* ECF No. 1 at ¶ 15.) Hence, from initial investigation through settlement, this case took just over one year. Spending so many hours on a case that settled so soon could suggest that counsel

worked inefficiently and duplicated efforts. A survey of recent class action settlements demonstrates that billing 1,029 hours in barely over a year is unusual:

- The court in *Watson v. Manhattan Luxury Automobiles, Inc.* found 1197.95 hours reasonable where "the parties actively litigated this case for nearly five years and reached a settlement in principle five days before the scheduled final pretrial conference and less than three weeks before trial." No. 20 CIV. 4572 (LGS), 2026 WL 2267941, at *5 (S.D.N.Y. Aug. 6, 2026).

- In *Caccavale*, the court found 171.2 hours reasonable where the case settled after five years of litigation and class counsel "engaged in extensive discovery, successfully opposed [a] motion to dismiss, responded to a judicial order to show cause concerning Plaintiffs' standing, and opposed a request for interlocutory appeal." 2025 WL 2960237, at *1, *13–14.

- In *Schutter*, the court found 659.9 hours reasonable, where the action spanned over three and a half years. 2024 WL 4118465, at *14–16.

- In *Roberts*, the court approved fees of $353,254.11—representing a 3.79x multiplier of counsel's $93,000 lodestar—where counsel "litigated this case for over ten years [and] successfully reversed a summary judgment against their clients on appeal[.]" 821 F. Supp. 3d at 358.

Nevertheless, considering the context of this case, the hours worked are reasonable. As explained above, this started as five separate cases. Naturally, that resulted in some duplication of early efforts. But counsel quickly began to work together, channeling the five actions into a single mediation process which culminated in the filing of this consolidated suit. Had the actions stayed separate, there would have been a great deal more duplication of efforts—five mediations, five applications for settlement approval, and so on. Plaintiffs should be rewarded, not penalized, for having had the foresight to consolidate sooner rather than later. Accordingly, the Court will not reduce counsel's hours.

Applying the adjusted rates from above to counsel's hours results in the following lodestar:

| Firm | Attorney Name | Reasonable Rate | Number of Hours | Total |
|---|---|---|---|---|
| D&C | J. Carton | $600 | 156.45 | $93,870 |
| | C. Friesen | $500 | 89.35 | $44,675 |
| | J.P. Kane | $400 | 10.5 | $4,200 |
| | L. Smith | $500 | 28.2 | $14,100 |
| **D&C Total** | | | | **$156,845** |
| Wright | W. Wright | $700 | 192 | $134,400 |
| | N. Wright | $600 | 136.5 | $81,900 |
| | K. Mata | $400 | 68.5 | $27,400 |
| | A. LeMaster | $275 | 7 | $1,925 |
| **Wright Total** | | | | **$245,625** |
| Wilshire | T. Coelho | $650 | 163.5 | $106,275 |
| | J. Leinbach | $585 | 75 | $43,875 |
| | R. Aguirre | $520 | 70.2 | $36,504 |
| | J. Chen | $471 | 31.5 | $14,844 |
| **Wilshire Total** | | | | **$201,498** |
| **Grand Total** | | | | **$603,968** |

"Having calculated the appropriate lodestar, [the Court] consider[s] the *Goldberger* factors to 'confirm the reasonableness' thereof." *Hasemann*, 2025 WL 2773748, at *9 (quoting *Wal-Mart*, 396 F.3d at 121) (citation modified). The question is simple: Should the Court grant

only the adjusted lodestar of $603,968, or should the Court apply a so-called "lodestar multiplier" to bring the fee up to counsel's contingency-based fee application? Assuming a lodestar multiplier is in order, should the Court increase the lodestar all the way up to counsel's requested fee of $948,063 (plus expenses), representing a multiplier of about 1.57; or should the Court meet Plaintiffs somewhere in the middle?

The Court concludes that a multiplier of 1.57 is reasonable and appropriate here, because courts routinely apply a multiplier to the lodestar in order to bring it into proportion with the percentage-of-the-fund amount. *See In re 3D Sys. Sec. Litig.*, No. 21CV1920NGGTAM, 2024 WL 50909, at *14 (E.D.N.Y. Jan. 4, 2024) (granting fees of $1,333,333, representing one-third of the settlement fund of $4,000,000 and 174% of counsel's lodestar of $764,660); *see also, e.g.*, *Roberts v. Genting New York LLC*, 821 F. Supp. 3d 340, 355 (E.D.N.Y. 2026) (granting fees of $353,254.11, representing 31.42% of the settlement fund of $1,124,217.46 and a 3.79 multiple of the lodestar of $93,000); *Sapozhnikov v. New York Cmty. Bank*, 824 F. Supp. 3d 242, 255 (E.D.N.Y. 2026) (granting fees of $411,125.55, representing 33.33% of the gross settlement fund of $1,233,500 and a 1.76 multiple of the lodestar of $233,812.20).

The reasonableness of the fee is corroborated by the *Goldberger* factors. The first, time and labor expended by counsel, has already been addressed. The second and third—magnitude and complexity of litigation and risk of litigation to counsel—were also largely addressed above in the context of settlement approval but are worth reiterating here in the context of attorneys' fees. While class actions in general are notoriously complex, in this case the complexity is diminished somewhat by the fact that Plaintiffs simply "piggybacked" on a public FDA investigation rather than conducting independent research. (*See* ECF No. 1); *Hasemann*, 2025 WL 2773748, at *10 (finding that "piggybacking" on Federal Trade Commission lawsuit

"counsels in favor of the fee reduction"). That said, Class Counsel took the case on contingency (ECF No. 25-1), which invariably carries risk. To compensate plaintiffs' counsel for the risk of obtaining no payment at all, courts routinely grant a "lodestar multiplier." *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts[.]"). Accordingly, on balance these factors support the requested fee.

Fourth, Class Counsel provided quality representation and are well-equipped to prosecute cases such as this, as set forth in the Preliminary Approval Order. (*See* ECF No. 21 at 12–13.) Fifth, the requested fee in relation to the settlement is one-third, which is reasonable. *See Cruz Guerrero v. Montefiore Health Sys. Inc.*, No. 22-CV-9194 (KHP), 2025 WL 100889, at *10 (S.D.N.Y. Jan. 15, 2025) (collecting cases and awarding 1/3 of the settlement fund for attorneys' fees). The sixth factor, public policy, is neutral here.

Accordingly, although the Court reduced counsel's lodestar to $603,968, the Court also deems it appropriate to apply a lodestar multiplier of 1.57, for attorneys' fees of $948,230.35. Adding in counsel's costs as well, Plaintiffs are entitled to a total award of $957,000.00, per their request. (ECF No. 28 at ¶ 27.)

**SERVICE AWARD TO PLAINTIFFS**

Next, Plaintiffs request a "Service Award" of $1,000 each to Class Representatives Jana Rabinowitz, Shana Denny, and Yolanda Pitre, and two Special Plaintiffs William Foreman and Amanda Zetterstrom, for a total amount of $5,000 taken from the Settlement Fund. (ECF No. 25-1 at 12–13.) As explained above under equitable treatment of class members, such service awards are routinely approved.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for final settlement approval (ECF No. 27) is GRANTED, and Plaintiffs' motion for attorneys' fees and service awards (ECF No. 25) is GRANTED. It is hereby ORDERED that:

(i) The prior conditional certification of the Settlement Class is hereby confirmed and made final for purposes of the class action settlement as approved by this Order. The Settlement Class is defined as:

> All purchasers within the United States that, between November 21, 2020 through March 6, 2026,[15] purchased for use and not for resale or distribution purposes, one or more of the Class Products described in Section 2.14, which specifies that the Settlement Class does not include: (1) the Honorable James M. Wicks and members of his/her immediate family; (2) Colgate; (3) Tom's; (4) any entity in which Colgate or Tom's has a controlling interest; (4) any of Colgate and Tom's' subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (5) any persons who timely exclude themselves from the Settlement Class.

(ii) The Court hereby appoints Shana Denny, Jana Rabinowitz, and Yolanda Pitre, to serve as Class Representatives.

(iii) The Court hereby finds that the Class Notice was the best practicable notice under the circumstances and that it has been given to all Settlement Class Members known and reasonably identifiable in full satisfaction of the requirements of Rule 23 of the Federal Rules of Civil Procedure and Due Process.

(iv) The Court hereby approves the terms of the Settlement Agreement as fair, reasonable, and adequate as it applies to the Settlement Class, and directs consummation of all its terms and provisions, except that the Settlement Agreement's *cy pres* provision shall be modified as set forth herein (*see supra* § C.e.ii).

(v) The Court overrules the Objections filed at ECF Nos. 23 and 24 in full. The Court overrules the Objections filed at ECF No. 26, except with respect to *cy pres*, as stated in the previous subsection of this Conclusion.

(vi) The Court awards a Service Award to each of the Class Representatives and Special Plaintiffs of $1,000.00 to be paid from the Settlement Fund.

(vii) The Court awards Class Counsel $957,000.00 in combined fees and expenses to be paid from the Settlement Fund.

---

[15] The Settlement Agreement defined the Settlement Class as all purchasers through the date of preliminary approval. (ECF No. 17-3 at § 2.8.) The Court granted preliminary approval on March 6, 2026.

(viii) The Settlement Agreement shall be binding on Defendants and all Settlement Class Members, including all members of the Settlement Class who have not been excluded pursuant to the Settlement Agreement.

(ix) The Court dismisses on the merits and with prejudice *Rabinowitz, et al. v. Colgate-Palmolive, et al.*, pending in the United States District Court for the Eastern District of New York. In addition, the Court also dismisses all claims which any Settlement Class Members alleged or could have alleged in any complaint, action, or litigation based upon the allegations in these Actions.

(x) Upon the Effective Date, each Class Member who has not opted out will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged the Released Colgate and Tom's Persons from any and all past, present, and future claims (except personal injury claims), demands, rights, suits, liabilities, injunctive and/or declaratory relief, and causes of action, including costs, expenses, penalties, and attorneys' fees, whether known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that any Class Member has, had, or may have against the Released Colgate and Tom's Persons that arise out of the allegations in the Actions, as set forth in *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456 (2d Cir. 1982), or otherwise depend on the same set of operative facts alleged in the Actions that have been brought, could have been brought, or are currently pending in any forum in the United States.

(xi) All members of the Settlement Class who did not duly request exclusion from the Settlement Class in the time and manner provided in the Class Notice are hereby barred, permanently enjoined, and restrained from commencing or prosecuting any action, suit, proceeding, claim, or cause of action in any jurisdiction or court against the Released Colgate and Tom's Persons who are to be discharged as noticed above in Paragraph 9, that arise out of the allegations in the Actions, as set forth in *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456 (2d Cir. 1982), or otherwise depend on the same set of operative facts alleged in the Actions that have been brought, could have been brought, or are currently pending in any forum in the United States. Settlement Class Members are not precluded from addressing, contacting, dealing with, or complying with requests or inquiries from any governmental authorities relating to the issues raised in this Settlement. Identification information about Settlement Class Members who effectively excluded themselves from the Class can be found at ECF No. 28-1 at 53.

(xii) Without affecting the finality of the Final Approval Order in any way, the Court reserves continuing and exclusive jurisdiction over the parties, including all members of the Settlement Class as defined above, and the execution, consummation, administration, and enforcement of the terms of the Settlement Agreement.

(xiii) The Clerk of the Court is directed to enter judgment accordingly and close out the case.

Dated: Central Islip, New York
September 23, 2026

**S O O R D E R E D:**

/s/ James M. Wicks
JAMES M. WICKS
United States Magistrate Judge